THE COLUMBUS SOUTHERN RAILWAY COMPANY *v.* WRIGHT,
comptroller-general.

1. As respects railroad companies having no exemption, a statute is not unconstitutional which provides for taxing railroad property for county purposes at the regular rate *ad valorem* which is levied by the county authorities on other property, each county through which a road runs being allowed to tax at that rate all the company's property, real and personal, located in that county, and in addition thereto, its due proportion of the rolling-stock and other floating or unlocated property of the company, that is, a proportion corresponding to the ratio between the company's property, real and personal, located in the given county, and the aggregate of its located property in all the counties through which the road runs. Properly construed, this is the scheme and purpose of the act of October 16th, 1889, on the subject of taxing railroad property for county purposes. The act is a general, not a special law, and except as necessarily checked and qualified by irrevocable exemptions previously granted, it is uniform, equal and just. It is not wanting in uniformity because it recognizes and seeks to abide by

inviolable charter rights of such railroads (if any) as can be taxed for county purposes only upon the basis of their net income, there being in fact, under existing conditions, no such railroads now in the State. Nor because it requires rolling-stock and other floating personalty to be apportioned for county taxation amongst the several counties through which the respective railroads run. Nor because it requires returns to be made to the comptroller-general of the State instead of to the tax receivers of the several counties, and designates that officer, and not the tax officers of the counties, to calculate the amount of taxes due to each county according to the returns, and to issue execution therefor. The nature of railroad property and its involved relations with the several counties interested, render the services of an officer common to all the counties appropriate for securing a correct and effective performance of these ministerial functions.

2. The act in question neither imposes a State tax for county purposes, nor attempts to levy county taxes directly by the State. It provides for taxing railroads for county purposes by and through the action of the county authorities, the rate in each county being fixed by such authorities, and being the same for all kinds of property. That different counties fix different rates is of no consequence, one and the same rate only being applied to property located in a given county.

3. The act refers to but one subject-matter, and contains nothing different from what is expressed in its title.

4. The State does not by this act deny to any person or railroad corporation the equal protection of its laws, and consequently there is no conflict with the 14th amendment of the constitution of the United States.

April 19, 1892. Argued and reargued at the last term.

Taxation. Railroads. Constitutional law. Statutes. Before Judge MARSHALL J. CLARKE. Fulton county. At chambers, August 29, 1891.

Reported in the decision.

W. A. WIMBISH and WORRILL & LITTLE, for plaintiff. CLIFFORD ANDERSON and GLENN & MADDOX, contra.

LUMPKIN, Justice.

On October 16th, 1889, the legislature passed an act entitled: " An act to provide a system of taxation of railroad property in each of the counties of this State through which said railroads run, and to provide a mode of assessing and collecting the same, and for other pur-

poses." Acts 1889, p. 29. The Columbus Southern Railway Company made its returns for the year 1890, as the act required, to the comptroller-general, who was proceeding regularly, in the manner prescribed by the act, to enforce the collection from said company of the taxes thereby imposed, when the company filed in the superior court of Fulton county an equitable petition to restrain him from so doing, on the ground that this act, in the several specified particulars below mentioned, was violative of the constitution of this State and of the United States. On *demurrer*, the petition was dismissed by the court below, and this judgment is assigned as error.

The petition alleges, in the first place, that the act is contrary to article 7, section 2, par. 1, of the constitution of Georgia, which declares: " All taxation shall be uniform upon the same class of subjects, and *ad valorem* on all property subject to be taxed within the territorial limits of the authority levying the tax, and shall be levied and collected under general laws." It is contended that this paragraph is violated for the following reasons:

First, because section 3 of the act provides for assessing upon some railroads county taxes, based upon property valuation, and these " railroads are assessed for taxation upon their personal property, wherever located, in the proportion as the value of the property located in each particular county bears to the whole property real and personal of said company," while section 4 of the act provides as to certain other railroads a method of assessment based upon their net income, "and in the proportion as the number of miles of road in the several counties through which said railroad runs bears to the whole length of such railroad."

Second, because the act prescribes a mode of assessing railroad property for taxation different from that pre-

scribed by the general law for taxing other corporations and individuals, in this, that the latter are taxed for the benefit of counties, only on their property within the limits of such counties, whereas with respect to a railroad company "its rolling-stock and other personal property, wherever located, is by the aforesaid act distributed for taxing purposes and is assessed for taxation for the benefit of the several counties through which it runs whether or not such personal property be within the territorial limits of such particular county, in proportion as the value of the property located in that particular county is to the value of the whole property, real and personal, of said company."

Third, because the State is the authority levying the tax under this act, and the rate of taxation is different in each of the several counties through which the road runs.

Fourth, because the act is a special law, and repugnant to the clause of the above quoted paragraph of the constitution requiring "that all taxes shall be levied and collected under general laws."

The petition further alleges that this act also violates the following provisions of our constitution, viz.: article 7, section 1, which enumerates the different purposes for which the legislature may impose taxes, among which is not included any provision authorizing the legislature to tax property for the benefit of counties; art. 3, section 7, par. 8, which declares that no law shall pass referring to more than one subject-matter, or containing matter different from what is expressed in the title; art. 6, section 9, par. 1, providing for uniformity in the jurisdiction, powers, proceedings and practice of courts of the same grade, it being alleged that under this paragraph the act could not confer upon the superior court of Fulton county jurisdiction of the case.

The petition still further alleges that this act also
v 89-37

violates that clause of the 14th amendment of the constitution of the United States, which declares that no State shall deny to any person within its jurisdiction the equal protection of the laws.

We will endeavor to discuss in the order above set forth the questions raised by the petition.

1. It will be seen that four objections are made to the act as infringing the uniformity requirement of the constitutional paragraph above referred to. The only distinct point made by the first of these is that the act provides one system of county taxtion for certain railroads based upon their net incomes, and another system for other railroads based upon an *ad valorem* valuation of their property. Long prior to the adoption of our code, the legislature, in the charters of certain railroad companies, limited the taxation to be imposed on their property to a certain *per cent.* of their net incomes, and in the case of at least one railroad, the Augusta & Savannah, to a certain *per cent.* of its gross income. In effect, these charters gave the companies indicated partial exemptions from taxation, and, under decisions made by the Supreme Court of the United States, are inviolable contracts between the State and the railroads. The legislature, in passing the act now before us, evidently took into consideration the facts just stated, and in view of the contingency that the general scheme of taxation contemplated might not be applicable to these companies, undertook to inaugurate a system of county taxation of railroad property, which would operate upon every railroad in the State, and thus meet all the requirements of our constitution. Accordingly the third section seeks to impose upon the property of all railroads in the State a uniform *ad valorem* taxation for the benefit of the counties through which they run, measured in each particular county by the rate of taxation there prevailing, and the purpose of the fourth section is to impose upon the

property of railroads having charter exemptions a system of taxation for the benefit of counties, to the full extent authorized by the charters of such railroads, in the event the third section could not be applied to them. It was undoubtedly intended to include in the terms of the act all railroads in the State, but by mere inadvertence no distinct or express provision is made for a railroad whose property is taxable only upon the basis of its gross income, or for railroads a portion of whose property is taxable at a limited charter rate, and the remainder at the general rate applicable to all other kinds of property. It is as to the railroads in the condition last mentioned that we experience the greatest difficulty in giving the act a practical enforcement, but we will endeavor to show, before concluding, that the difficulty is by no means insuperable. The omission to provide expressly for a railroad like the Augusta & Savannah, in view of what will follow, is of slight consequence. We have now reached the point where it will be proper to discuss and dispose of the fourth section of the act. The result of our deliberations is that this section is not a vital portion of the law, but is really inoperative and needless. In the first place, we will observe, as already intimated, that the section itself does not affirmatively assert there is any railroad, or class of railroads, in the State, the property of which is taxable, *for county purposes*, on the income basis. It begins by saying, " that should the property of any railroad company in this State be not subject to taxation [i. e. taxation on the *ad valorem* basis, for county purposes] as hereinbefore provided, but taxable [for the benefit of counties] upon its net income, such railroad company shall report," etc. The words inserted in brackets show the true meaning of the section, and thus understood it is wanting in any express declaration that there is in the State any railroad which cannot be taxed, *for county purposes*, on the *ad*

*valorem* basis, as provided in the preceding section. Consequently, having reference to the act alone, we would not be at liberty, in the absence of proof, to assume the existence of any such railroad, though we may otherwise know the fact that there are railroads having property taxable, *for State purposes*, on the income basis only. So far as the record in the case at bar is concerned, we have no evidence that there is in Georgia any railroad the property of which, if taxable at all for county purposes, is not taxable under the provisions of the third section of this act, and in order to sustain the objection that the act is wanting in the uniformity required by the constitution, because it does not operate alike upon all railroads in Georgia, it would be incumbent on the plaintiff in error to show the existence of one or more railroads upon which the act could operate, but which it fails to cover. Nothing of the kind having been done, we might, perhaps, properly dispose of the present case upon the idea that neither in the law itself, nor in the record, is there any positive statement or proof that there is a single railroad in Georgia to which the provisions of the act outside of the fourth section are not applicable. We have no disposition, however, to confine the decision of this case within such narrow lines, or to evade questions which must inevitably arise under this act in the progress of its further enforcement, when it is made to appear, as will certainly be done, that there are railroads in this State whose property, either in whole or in part, is taxable for State purposes upon the income basis of measuring the taxes. The physical existence of such railroads is, at last, a matter of no great importance. The real question is, can railroad property, which is taxable only on the income system, be subjected to any further taxation, after the State has already exacted, for State purposes, the full limit of taxation authorized by the charters of the companies owning

such property? This question must, in our opinion, be answered in the negative. When a charter, which has been held by the highest court in the land to be a contract between the State and the railroad, which the former cannot impair or violate, expressly declares that the railroad's property shall not be taxed beyond a certain limit, it seems to our minds free from all doubt that the State cannot for any purpose, or in any manner, exceed this limit. The proposition is too plain to admit of serious argument, and we therefore pass it as satisfactorily established. This being true, the existence or non-existence of railroad property taxable upon the income basis only, is, so far as attempting to tax it for county purposes is concerned, immaterial, if in fact the State has already exhausted its power of taxation upon this property. If there is such property, the State cannot tax it further than authorized by the charter rights of the company or companies owning it; if there is not, then there is no such property to be taxed, and in either event there is nothing upon which this section can operate. It is a part of the public history of Georgia, of which we cannot affect to be ignorant, that the railroads having these charter exemptions from full taxation have never, when taxed at all, been taxed less than the limit allowed by their charters, and the strong presumption that this policy will be continued in future affords, in view of what has been said, ample justification for disregarding this section entirely. There is not now, nor ever likely to be, any railroad property taxable on the income basis, which can be taxed at all for county purposes, and this section refers to no other kind of property. As long as the general rate of State *ad valorem* taxation produces from property of a given value an amount of tax exceeding that which would be produced from railroad property of like value, taxed to the full charter limit, it may be that, under the

principle announced in *Atlanta & Florida R. R. Co.* v.
*Wright, Comp. Gen.,* 87 *Ga.* 487, the State will be *com-
pelled* to continue the policy above mentioned.    At any
rate, the contingency that this fourth section will ever
be capable of having any practical operation is entirely
too remote to be urged as a reason for regarding it as a
material part of the act, when by so doing the enforce-
ment of this wise, just and salutary law might be seri-
ously embarrassed.    It seems clear, therefore, that the
act may properly be treated as if it did not contain
the fourth section.    Where a portion of an act is for
any reason inoperative, the remaining portions of it may
and should be upheld, if capable of enforcement.    This
act is really complete, and entirely adequate to accom-
plish the purpose for which it was designed, without the
fourth section.    Its phraseology, leaving this section out,
is sufficiently broad to cover all the railroads in the
State, and there is nothing to suggest that any railroad
whatever which ought to be included was omitted, or
intended to be, from the general scheme of the law.
Indeed, there can scarcely be a doubt that this section
was inserted as a mere matter of precaution to cover, *if
necessary*, railroads having partial exemptions from taxa-
tion, and thus provide against an objection to the con-
stitutionality of the act, which might be raised if it
should appear that one, or more, of these railroads was
liable to county taxation.    This precaution was not
necessary, and the section might have been altogether
omitted.    The act, without it, undertakes to apply a
uniform *ad valorem* system of county taxation to all the
railroads in the State, which are subject to such taxation.
If it cannot be enforced as to some railroads because of
peculiar exemptions in their charters, it should not for
this reason be set aside.    This, in principle, was ruled
in the *Atlanta & Florida* case, *supra*.    See first head-
note, and comments of SIMMONS, J., on page 489.    So

far as the plaintiff in error in this case is concerned, it has no right to complain of the act for want of uniformity growing out of the manner in which it attempts to deal with the class of railroads whose property is partially exempted from taxation. If they have been already taxed in the only manner and to the full extent the legislature can tax them, no fault should be found with the law because its effort to tax them further for the benefit of counties is futile. The uniformity requirement of the constitution, for the reason stated in the case just cited, is not, because of the failure of this effort, violated. Whenever it is sought to enforce the act against a railroad upon which it cannot operate, and the objection is properly made, the courts can pass upon the questions then presented, and afford such railroad its rightful protection.

We have in this branch of the discussion proceeded thus far upon the assumption that there might actually be some railroad companies in this State whose *entire* property is, under their charters, taxable, up to a certain limited rate, upon the income basis of measuring the taxes, but, as at present organized and consolidated, there is not, perhaps, a single railroad company in Georgia exactly in this condition. Practically, there are, we presume, but two classes of railroads with which we have to deal: *first*, those having no exemptions from taxation, and *second*, those having some property taxable upon the income basis, and other property taxable at the general rate. We will now endeavor to show how the act can operate upon each of these two classes, respectively, although, as already stated, it does not expressly provide in distinct terms for the latter.

The first section provides for the making of an annual return by each of the railroad companies of Georgia to the comptroller-general. It would seem that the "rolling-stock," and "all other personal property,"

the value of which is required to be shown by the third item of the return, are to be valued separately, for their gross value would appear by simply subtracting the amount returned in the second item from that returned in the first. It is, however, of but little importance whether this construction be correct or not, because this third item seems to be of small use, unless it may aid in verifying the correctness of other parts of the return. The second section of the act is plain and easily understood. Some difficulty arises as to making the proportion provided for by the third section. It was argued with considerable plausibility that following its requirements would not exhaust the property of the railroads to be distributed for taxation among the counties. We copy the following illustration from the argument of our talented brother Wimbish :

"In this connection the attention of the court is called to a fatal error in the mathematics of the act, which seems to have hitherto entirely escaped observation. The rule prescribed for ascertaining the amount of rolling-stock and other personal property to be distributed to the various counties is as follows:

"'As the value of the property located in the particular county is to the value of the whole property, real and personal, of said company, such shall be the amount of rolling-stock and other personal property to be distributed for taxing purposes to each county.'

"Suppose the entire value of the company's property is $300,000, of which $100,000 consists of rolling-stock and other personal property to be distributed ; $200,000 is the value of the real estate and track-bed, which is located in two counties equally, county A having $100,-000, and B having $100,000. Now we desire to ascertain the amount of rolling-stock and other personal property to be distributed in each of these counties. As the value of the property located in the particular county ($100,000) is to the value of the whole property,

real and personal ($300,000), such shall the amount of rolling-stock and other personal property to be distributed to such county ($\frac{1}{3}$ of $100,000 = $33,333$\frac{1}{3}$). Therefore the statement is as follows:

To A County .......... ........... ............ ....... $33,333$\frac{1}{3}$.
To B County ....... ........... .......... ............. $33,333$\frac{1}{3}$.
         ————
         $66,666$\frac{2}{3}$.

"This leaves a deficit of $33,333$\frac{1}{3}$, equal to one third of the entire value of the rolling-stock and personal property, which is not taxed at all (unless the words 'rolling-stock and other personal property,' as used in the first section of the act, include both located and unlocated personalty, in which event one third of the rolling-stock would entirely escape taxation, while two thirds of the other personal property would be twice taxed.)"

Taking the words of the third section literally, it seems that the result would be as shown in this illustration, but this would necessarily impute to the legislature the improbable and absurd purpose of leaving a part of the personalty of each railroad untaxed, and double taxing other parts of it. This, certainly, could not have been its intention. The act seems to contemplate that a railroad has two kinds of personalty, *located*, having a fixed and actual *situs*, or abiding place for the time being, and *unlocated*, being movable like rolling-stock, and frequently shifting its place. Of course, the realty is absolutely fixed and immovable, and always remains so. The scheme of the act is to tax the located property of the railroad, real and personal, in each county where it is situated, at the county rate of taxation of force in that county, and to apportion the transitory, frequently moving personalty, in fair proportion among the several counties. This class of property may be fairly said to be situated at one place as well as another, or to "reside," if that word is allowable, along the entire length of the road. Having

no fixed *situs*, it is absolutely right to apportion it, and this is really all that could be appropriately done with it for taxing purposes. The *unlocated property* of the road therefore is to be distributed in just proportion to the portions of *located property* (real and personal) situated in the several counties.

It is manifest that in making a proportion for the purpose of ascertaining the amount of a particular share in a distribution of any kind, the thing to be divided and which constitutes one term of the proportion, should not be added to either of the other terms. It must be kept separate, and the share arrived at by the ratio which the smaller of the remaining terms bears to the other. The first term of the proportion contemplated by section 3d, " the value of the property *located* in the particular county," is literally as it should be. The second term, " the value of the whole property, real and personal, of the said company," should be construed to have the meaning it would have if the word " located " were inserted after the word " whole." This, unquestionably is the purpose of the law, and thus understood, it is logical, natural and fair ; that is, the transitory personalty which a county would draw to itself for taxation would be in the proportion the company's located property in that county bore to the entire located property of the company. Otherwise, the proportion would have the vice, already pointed out, of adding the thing to be divided to one of the other terms.

We have long and anxiously studied and examined this act, and being convinced that we understand its true intent and meaning, we do not hesitate to give effect to that intent by adopting the construction stated. The law is too wise, too just and too important to be defeated by sticking in the bark and adhering to the literal meaning of words when by so doing we would not only set at naught the legislative will, but impute to our law-makers

the folly of making a provision at once mathematically absurd and legally impracticable. Nor is our construction of the words in question at all strained. It is perfectly fair to assume that the law means to declare the *located* property in a county shall draw for taxation its share of the distributable property, in the proportion this located property in the county bears to the *whole* property of the company, real and personal, *of like kind*, that is the whole located property of the company. Let it be borne in mind it is the located property situated in the different counties, to which the unlocated is to be added in proper proportions for the purpose of being taxed, in order that the aggregate of the unlocated personalty as well as all the located property real and personal, may be rightly taxed. This could never be done by giving the words of the act their literal meaning, but can be easily done in the manner shown. If one construction meets and effectuates the plain purpose of the law, and another defeats it, the former should prevail.

To further explain the operation of the law, let us suppose that a railroad traversed four counties, and that the return required by the act showed the following figures. Those selected are, of course, arbitrary, and round numbers are used for the sake of simplicity, but the principle is applicable to any return by a railroad company lawfully made:

1. Aggregate value of whole property of railroad.........$3,000,000
2. Value of real estate and track-bed............$2,000,000
3. Value of rolling-stock...............$ 550,000
   "   " all other personalty
   (*located and unlocated*)............ 450,000     1,000,000     $3,000,000

4. Value of property (real and personal) located
   in county A.....................$1,200,000
   "   "   "   "   " B...... .............. 600,000
   "   "   "   "   " C..................... 400,000
   "   "   "   "   " D..................... 200,000

The sum of these values.......... .... .........$2,400,000
Deducted from $3,000,000, the entire property
of the company, will leave........ ............. 600,000
which will be the value of the rolling-stock
and other *unlocated* personalty.

Again, deduct from the $2,400,000 of located property real and personal, the $2,000,000 of realty, and it will leave $400,000, the value of *the located personalty*. This $400,000 taken from $450,000, the total value of personalty, exclusive of rolling-stock, will leave $50,000 of unlocated personalty, besides the rolling-stock.

Then add the following:

| | |
|---|---:|
| Rolling-stock...................................................$ | 550,000 |
| Other unlocated personalty........................... .. | 50,000 |
| Total unlocated personalty.............................$ | 600,000 |
| Located personalty....................... ........:...... ............. ......... | 400,000 |
| And we have a grand total of personalty.................$1,000.000 | |

which is the amount shown by the third item of the return.

The property upon which the tax is to be assessed in county A would be, *first*, the property located therein, $1,200,000, and, *second*, its proportion of the $600,000, representing the rolling-stock and unlocated personalty. To ascertain this, our statement of the proportion to be made under the act, as we construe it, would be as follows: As the value of the property *located* in the county, $1,200,000, is to the value of the whole *located* property of the road, $2,400,000, so is the unlocated property to be taxed in that county, $——— to the whole unlocated property of the road, $600,000. Upon solving this proportion, the blank will be filled with $300,000, which added to the $1,200,000 above will give $1,500,000, the amount upon which taxes should be assessed for county A. Pursuing the same method, we will obtain for the counties B, C and D, respectively, $750,000, $500,000 and $250,000, and all these sums added together will make $3,000,000, the total value of the company's property.

It will be observed that in applying the act, as shown in the foregoing illustration, the words " rolling-stock and other personal property " in the clause, " Second, the amount of tax to be assessed upon the rolling-stock

and other personal property, is as follows," are treated as meaning the rolling-stock and other *unlocated* personal property of the company. That this is proper seems inevitable. The first section of the act requires that the third item of the return to be made by the company shall show " the value of the rolling-stock and *all* other personal property of said company," *i. e.*, the total value of the company's entire personalty of every kind whatever. In the clause of the third section now under consideration, the significant word, " all," is omitted. Moreover, the taxation of the *located* personalty is fully provided for in the preceding clause, for when such property in each and every one of the counties is taxed as located therein, it will result that all of it has been taxed. The word " other," therefore, as here used, must mean " other than *located*," *i. e.*, the unlocated personalty, or personalty of like nature with rolling-stock.

If the words " other personal property " in this section of the act should be construed as meaning " all other personal property," the located personalty of the company would be twice taxed; because it would in any particular county be taxed directly as located therein, and its value would be included in the sum total of " rolling-stock and other personal property " to be distributed for taxation among the several counties traversed by the road, and thus taxed again. It cannot for a moment be supposed that the legislature intended any such result as this, and any construction leading to this conclusion must, of course, be discarded. It cannot be denied that in many particulars, to some of which we have already alluded, the meaning of this act might have been more clearly and satisfactorily expressed, and the method of its enforcement made plainer, but its real scheme and purpose are sufficiently obvious to justify us in upholding it. As we understand the law,

the system of county taxation it inaugurates is both uniform and fair.

Upon property actually located in a county, the county rate of taxation is assessed as upon the property of all other persons and corporations in that county. This is certainly free from all objection. Property such as rolling-stock, car furniture and fixtures, tools, and all other kinds and descriptions of personalty having no physical location or *situs*, may, as we have stated, be fairly considered as belonging as much in one county traversed by the road as another, and if each county gets its tax only upon its fair proportion thereof under the distributive method provided by the act, the doctrine of uniformity is not violated, but absolute equality is maintained. We have shown clearly that under this system, each county draws to itself for taxation such a proportion of the unlocated personalty of the railroad as the railroad's property located in that county bears to the total aggregate of all its located property, and thus is given to each county in fair *ratio* the just compensation due it for the measure of protection it affords the company's property actually, or constructively, within its limits.

Having shown, we think satisfactorily, that the law may be maintained and enforced justly against railroads having no charter exemptions from taxation, we will now consider its applicability to those railroads a part of whose property is taxable for State purposes at a charter rate, and a part at the general statutory rate applicable to the mass of all other kinds of property within the State, for unless this class of railroads is also subjected to the burden of county taxation, as far as such burden can be properly imposed, the law would not meet the requirements of the constitution. The principal difficulty is presented in the objection that, under the system of returns required by the act, no

means are afforded for separating the property of a railroad into the two portions indicated, one taxable upon one basis, and the other upon another, and that therefore it is impossible to enforce the act at all as to this class of railroads.

While the act does fail to provide expressly for such a separation of any railroad's property in the returns to be made, its terms are broad enough to apply to and reach all the railroads in the State, and all of them, without exception, must make returns. If any railroad of the class now being discussed should make returns precisely as required by the act, but refuse to pay the county taxes assessed upon the basis of such returns, on the ground that a portion, at least, of its property could not be thus taxed, and accordingly the comptroller-general should issue a *fi. fa.* for the whole amount of the taxes, then upon a proper defence the whole matter could be so adjusted in the courts—as was done heretofore in the State tax cases against railroads—that only the lawful taxes would be required. Indeed, the act provides that any railroad company may dispute its liability to the tax imposed by the act, by an affidavit of illegality. But we do not think there need be any appeal to the courts by railroads of the class now being considered, nor is it necessary to so hold, in order to carry this law into effect. The officers of each railroad know its precise condition in the respects mentioned, and can easily separate its property into the parts taxable respectively on the income basis, and the *ad valorem* basis, and can make this all appear in their returns. For this purpose, the different portions of property taxable upon different bases, may be treated as if they were the property of separate and distinct railroads. The propriety of so doing is sustained by the reasoning of Mr. Justice Strong in Central, etc., R. R. *v.* Georgia, 92 U. S. 665. In reply it may be said, the act in question

does not require any returns of the kind indicated to be made. The answer is, that the act deals alike with all the railroads in the State, outside of those hypothetically referred to in the 4th section. That section cannot, in any view of it, apply to the class of railroads with which we are now dealing, and they, therefore, undoubtedly are covered by other portions of the act, and are treated, primarily, as if they had no exemptions or special privileges whatever. If any of them claim to have such, it is incumbent on them *to show the fact, and why*, and *to what extent.* To do this by making suitable returns is therefore not a burden, but a privilege; and though the act does not expressly so require, nothing in its terms forbids a railroad company from making fuller and more explicit returns, if necessary for its own protection; and such a course on the part of a railroad company would certainly be in harmony with the general principles of law and justice.

Upon so much of the property (or its value) of a railroad of this class as is taxable upon the income basis, there is no further liability for county taxation, when the State has taken for State purposes the full amount of tax authorized by the charter. This would also be true of any railroad in the State, if there be one, which we have already doubted, whose entire property is taxable upon the income basis only. In either case, by proper returns to the comptroller-general all difficulty may be avoided.

It was stated in the argument, that although the charters of some of the railroad companies in this State to which we have referred limited the amount of taxation which could be taken for State purposes, nothing contained in those charters would prevent the taxing of such companies for county purposes, and that they are liable to be so taxed under the act before us. We express no opinion on this matter further than to say that if the

above position is correctly taken, this law can, of course, be enforced against such companies in the same manner as if they had no exemptions whatever.

The next objection made by the petition is, that the requirement of the constitution as to uniformity in taxation is violated, because certain personal property of railroads is taxed for the benefit of counties, though not situated therein, while as to other corporations and individuals county taxation is imposed, so far as any particular county is concerned, only on property within its territorial limits. This objection is disposed of by what has already been said. We have shown that in each county, its rate of taxation is applied to the property of the railroad actually located therein, and that it is perfectly just and proper to distribute the unlocated personalty of the road for taxing purposes, in fair proportion, among the several counties, the corporation residing, *sub modo*, in all the counties along its line of road, and therefore in one as much as in another.

In the next place it is contended that the same paragraph of the constitution is violated, because the act prescribes a different rate of taxation in each of the several counties through which a railroad passes. The obvious answer to this objection is, that the act does not thus impose any tax substantially different from the county taxes imposed on all other tax-payers. Certainly it does not, in any view of the question, impose any tax for State purposes. It merely provides a means for the county to apply to railroad property its own rate of taxation and collect the tax for county purposes. The vital thing is the rate, and the State has nothing to do with fixing it in any county beyond general regulations restricting its amount, and the like. It is entirely immaterial whether mere ministerial acts and calculations, which when correctly done and made can have but one possible result, are the work of the comptroller-

general or of the county authorities. If the act provides, as we think it does, a constitutional scheme of taxation, what possible difference can it make whether the amounts upon which taxes are to be paid are arrived at by one officer or another, such amounts being necessarily the same in either event? As the tax is for the exclusive benefit of the county, and it fixes the rate, it is *a county tax*, and so long as a county taxes all property within its jurisdiction *ad valorem* and at the same rate, the uniformity required by the constitution is observed, and this is true no matter what functionary acting by law for the county does the necessary ministerial acts. The question is all the more free from difficulty because under our system each tax-payer values his own property for taxation and makes his own returns. So under the present law the railroad can and does make returns to the comptroller-general, which serve the same purpose as if it made separate returns to the tax receivers. It fixes the amounts on which it must pay taxes, and each county fixes its own rate. Hence, under this law a railroad would not have to pay more tax than if each county by its own officials attended to the whole business. Not being, therefore, really injured, the railroads have in this respect no ground of complaint. Indeed *under this law* these corporations have one advantage over other tax-payers. Returns made to tax receivers are overlooked by the grand juries, and a system is provided for increasing the valuation of a tax-payer's property when he undervalues it. Code, §§923(b) *et seq.* No such rule is applied to railroads by this act, but their returns stand as they make them, whatever may be the law as to their returns for State taxation. We will only add that as the act allows corporations, whose property is taxable under it, to designate in their returns what part of their property (real and personal) is located in a particular

county, there is no ground for the complaint that the
law *may* subject property located in one county to the
rate of taxation prescribed by some other county. If,
for example, the plaintiff in error returns a switch
engine as a part of its property located in Muscogee
county, it will be taxed at the rate prescribed by the
authorities of that county, and none other.

Another reason assigned why this act is contrary to
the above paragraph of the constitution is, that it in-
fringes the provision therein that all taxes "shall be
levied and collected under general laws," the specifica-
tion being that the method of *collecting* the taxes im-
posed by this act is different from that prescribed by
general laws for the collection of other taxes. The
reasoning employed under the last head is applicable
here. The amount to be collected is the same in any
event, and the general features of the means of enforc-
ing payment are substantially the same as in other
cases. Our State government, from necessity, has here-
tofore proceeded, so far as taxation is concerned, upon
the idea that legislation could and should be adapted to
the form and situation of the property. For example,
railroads, insurance and express companies, and some
other corporations, are required to make their tax re-
turns to the comptroller-general. This is certainly
more convenient than any other plan, if not in the very
nature of things absolutely requisite. Upon default in
paying the taxes, the officer last named issues execution.
Other corporations and persons make returns to tax re-
ceivers in their respective counties, and upon failure to
pay their taxes the tax collectors issue executions, but
the substantial features of the procedure are the same
in all these cases. The tax-payer makes his own re-
turns, putting his own valuation upon his property, the
execution in each case commands the levying officer to
make the money out of the tax-payer's property, and

the advertisement, levy and sale are conducted in the same manner in one case as in another. Substantial uniformity in the methods of collecting taxes is thus secured, and this is all that is required. This act makes no further departure from the method usually employed to collect other taxes than is made necessary and expedient by the nature, situation and extensiveness of the property, nor is it, for any reason apparent to us, special legislation offensive to our constitution.

2. In the next place, the act is said to violate art. 7, sec. 1, of that instrument defining for what purposes the legislature may impose taxes, and not including therein taxation for the benefit of counties. We have already shown that the taxation provided for by this act is county and not State taxation, and therefore this section of the constitution is not applicable.

3. Again, it is contended that the act violates art. 3, sec. 7, par. 8, of the constitution of this State, because it refers to more than one subject-matter, the point being that it provides for taxing some railroads on a property basis, and others on the basis of their incomes. For reasons already stated, it is manifest that this position is without foundation.

4. The petition also avers that the act violates that clause of the fourteenth amendment to the Federal Constitution prohibiting any State from denying to any person within its jurisdiction the equal protection of its laws. The contrary of this will appear from the foregoing discussion.

The petition makes one other objection to the act, which the able counsel for plaintiff in error very properly abandoned in this court as not well taken, and for this reason we did not notice it in its order. This objection is that under art. 6, sec. 9, par. 1, of the constitution, jurisdiction of cases arising under this act could not be conferred on the superior court of Fulton county. The

act, as we have seen, allows the levy of executions issued under its provisions to be met by affidavits of illegality, and they are made returnable to that court. If a levy of such an execution had been made on property of the plaintiff in error, and it had availed itself of the remedy thus offered, it would not be heard to say this remedy was not a proper one. So when it voluntarily files in that court a petition seeking to restrain the comptroller-general from enforcing this law against it, a still stronger reason appears for not permitting it to deny the court's jurisdiction.

As already remarked, we have examined this act most carefully and deliberately. It provides, we think, a reasonable, uniform and fair system for the taxation of railroads by counties. There is no reason why these corporations, like all other persons, should not bear their share of the burdens of taxation for the benefit of the counties through which they run, and from which they derive revenue. Although the act may not in all its parts be absolutely perfect and complete, the purpose of the legislature is sufficiently manifest to be understood, and we have endeavored to show how it may be carried into effect. We would not be authorized, even if we felt so disposed, to set this law aside because of defects which are not vital; and we certainly ought not to do so when we are not only satisfied it is capable of a proper enforcement, but also fully and cordially approve its wise and just provisions. It is not unconstitutional for any reason assigned in the petition, or for any other of which we are aware.     *Judgment affirmed.*