94  61
94  760

</div>

HALE-BERRY CO. *v.* DIAMOND STATE IRON CO. *et al.*

1. An insolvent corporation, not municipal, is subject to be proceeded against under section 3149(a) *et seq.* of the code, and a receiver may be appointed to administer its assets, although it may have ceased to do business before the creditors' petition against it was filed.

2. The petition need not describe the assets of the corporation, the object being to have a receiver as to all its assets. In such case, however, the receiver in making a seizure of anything not expressly mentioned will act at his peril as against the rights of other persons.

3. It is not matter of error, as against an insolvent corporation, to treat as assets still belonging to it accounts, or books of account, which it has assigned to one or more of its creditors as collateral

security, without having complied with the statutory requirements touching voluntary assignments by insolvent debtors, with respect to a sworn inventory of all assets and a sworn schedule of all indebtedness. While, by section 1953 of the code, a debtor, though insolvent, may give a lien by mortgage, or other legal means, or may transfer negotiable papers as collateral security, his insolvency precludes him from voluntarily assigning as mere security for a pre-existing debt anything which requires an assignment to pass the title, such as non-negotiable choses in action.*

4. The evidence showing that under its charter the capital stock of the defendant corporation was to be $10,000.00, with the privilege of increasing the same to $50.000.00, which privilege was never exercised except to the extent of increasing the capital stock to $15,000.00, which amount was subscribed for and fully paid in; *and the evidence further showing that long before the filing of the petition the corporation had parted absolutely with all of its property, other than choses in action, the whole proceeds going to the payment of its debts, and no fraud being alleged or shown, there was no case for the appointment of a receiver to sue for any unpaid stock subscriptions, or take possession of the property with which the corporation had so parted; and as some of the choses in action consisted of notes, and these were transferred as collateral security to certain creditors whose claims far exceeded the amount likely ever to be realized by collection, and the fair presumption being that the notes were negotiable, there was apparently no case for a receiver as to them.

March 26, 1894. Argued at the last term.

Petition for injunction, receiver, etc. Before Judge HENRY. Floyd county. November 17, 1893.

MCHENRY, NUNNALLY & NEEL, for plaintiff in error.

REECE & DENNY and C. A. THORNWELL, *contra.*

LUMPKIN, Justice.

1. The decision of this court in *National Bank of Augusta* v. *Richmond Factory et al.*, decided at the last term, 91 *Ga.* 284, 18 S. E. Rep. 160, supports the ruling announced in the first head-note.

2. The object of the petition filed against the Hale-Berry Company being to have a receiver appointed to take charge of all the assets of this corporation, there

---

*The doctrine of this note is overruled. See opinion in *Boykin, Seddon & Co. et al.* v. *Epstein & Wannbacher et al.*, October term, 1894.

was no indispensable necessity for alleging of what the assets consisted, or for describing them in detail. The equity of the petition was complete without such description. It would have been better, however, to state distinctly what the assets were and where they were located, as this would have enabled the receiver the more readily and intelligently to understand and carry out his duty in the premises. He was undoubtedly authorized by the order to take possession of all the assets of the defendant corporation, but as all of them were not definitely described or pointed out, he would necessarily act at his peril, so far as the rights of other persons might be concerned, in making a seizure of anything not expressly mentioned. Of course, a receiver would be protected in taking possession of any particular property when authorized and directed to do so by the plain terms of the judge's order; but when an order, in mere general terms, directs him to take charge of "goods," "property," or "other assets" belonging to an insolvent corporation, with no further description, he must be careful to seize only what actually belongs to this corporation; and if he seizes what belongs to other people, it will be at his own risk. If this is not good law, a receiver armed with an order of the kind mentioned could, with impunity, take possession of any property he pleased, provided only he in good faith believed it belonged to the defendant. Although this is a day of receivers, and their dominion seems to be rapidly extending all over the land, the courts, as yet, are hardly prepared to sanction their being let loose upon the general public, free from all restraint or responsibility.

3. It appears that the Hale-Berry Company, in order to secure its indebtedness to the First National Bank of Rome, executed and delivered to the bank a mortgage upon its entire stock of goods and fixtures; and also, as collateral security for this indebtedness, transferred

to the bank its notes and accounts and books of account. It also transferred and assigned to other creditors, as collateral security for debts due them, all the notes and accounts in the hands of the bank; "that is, all the notes and accounts remaining after the debts of the bank [were] paid." At the time these assignments were made, the Hale-Berry Company was undoubtedly insolvent.

Our judgment in this case was rendered March 26th, 1894, and it was then decided that the transfers of these accounts and books of account were, in effect, voluntary assignments of an insolvent debtor for the benefit of creditors, and that the same were, under the act of October 17th, 1885 (Acts of 1884–5, p. 100), void because made without the sworn inventory and schedule required by that act.

On the 10th of May thereafter, while the opinion in this case was being prepared, the case of *Boykin, Seddon & Co. et al.* v. *Epstein & Wannbacher et al.*, from the Eastern circuit, came on to be argued, and permission was then granted to review the ruling in the present case as announced in the third head-note. For this reason, it was determined to delay filing an opinion in this case until after the case of *Boykin, Seddon & Co. et al.* v. *Epstein & Wannbacher et al.* had been decided. The decision in it was rendered on October 25th.

After a full and careful deliberation upon the question thus presented for reconsideration, it was adjudged that the previous case should be overruled in so far as it holds that accounts or books of accounts are not assignable as collateral security for a debt owing by an insolvent debtor to the assignee, without complying with the statutory requirements as to sworn inventory and schedule.

We will not, at present, discuss further the question involved, but will undertake to deal with it in the opin-

ion which will be written in the case of *Boykin, Seddon & Co. et al.* v. *Epstein & Wannbacher et al.*

4. The evidence shows that under its charter the capital stock of the Hale-Berry Company was to be $10,000.00, with the privilege of increasing the same to $50,000.00, but that this privilege was never exercised except to the extent of increasing the capital stock to $15,000.00, which latter amount was subscribed for and fully paid in. It is true that Hale, one of the stockholders, borrowed from the bank the money with which to pay for his stock, and that Berry, another stockholder, indorsed this note, paid it off, took Hale's stock as collateral security, and continued to hold the same, and that Hale has never paid Berry for the advance; but it also appears that the entire amount of cash due upon the stock subscription of Hale and the other stockholders was received by the company and went into its business, and that none of the indebtedness of the corporation is for money borrowed by its stockholders, or any of them, with which to pay their stock subscriptions. We are therefore quite clear that no case was made for the appointment of a receiver to sue for and collect any unpaid stock subscriptions.

The evidence further shows that after giving to the bank the mortgage mentioned in the preceding division of this opinion, the property covered by this mortgage was (with the consent of the bank, and also with the consent of other creditors holding a second mortgage on the same) fairly sold for its full value at private sale, and all the proceeds applied to the payment of the debt due the bank. This, therefore, amounted in substance to an absolute sale by the corporation of a portion of its property in payment of its indebtedness. There is no law to prevent a transaction of this kind; and as no fraud was either alleged or shown in this connection, there was no occasion for appointing a receiver to take

v 94-5

possession of the property covered by the mortgages mentioned, and disposed of as above stated.

As already seen, some of the choses in action transferred primarily to the bank, and secondarily to the other creditors, consisted of notes. The claims of the creditors to whom these notes were transferred as collateral security far exceed any amount likely to be collected upon the notes. In the absence of evidence to the contrary, the fair presumption is that these notes were negotiable; and if so, the insolvent corporation undoubtedly had a legal right, under the above cited section of the code, to transfer them as collateral security. Apparently, therefore, there was, so far as the record before us shows, no occasion for a receiver as to them.

In view of the foregoing, we adjudged that the judgment of the court below should be reversed in so far as it directed the receiver to take possession of any of the assets referred to in the order of appointment, except the accounts, books of account, and other books of the defendant corporation. With this disposition of the case, save as to the exception mentioned, we are still satisfied; but with the light now before us, we think the judgment below should have been reversed generally.

*Judgment reversed in part, and in part affirmed.*