BOYKIN, SEDDON & COMPANY *et al. v.* EPSTEIN *et al.*

1. The scheme of the code of 1863 (§§1954, 1955), with reference to transfers and assignments by insolvent debtors, was that in case the debtor parted with title, except as to negotiable papers trans-

ferred as collateral security, the effect of the transfer or assignment had to be either the actual extinguishment of a debt or debts in whole or in part, or the creation of a fund for the equal benefit of all his creditors. But by the act of February 24th, 1866, this scheme was changed so as to allow transfers and assignments of any property whatsoever, including choses in action, for the benefit of a single creditor, or of a number of creditors, to the exclusion of others. Hence, under this act an insolvent debtor (though he could not have done so under the original code) may assign to a creditor, for that creditor's exclusive benefit, accounts or choses in action not embraced in the descriptive words "negotiable papers," as collateral security for the debt; and as such assignment creates no trust, there being no person other than the assignee taking any benefit under it, the assignment acts of 1881 and 1885 do not apply to it.

(a) The case of Hale-Berry Company v. Diamond State Iron Company et al., decided March 26, 1894 (ante, 61), was correctly decided with reference to the code of 1863, but it is not a correct exposition of the law of the code as modified by the act of 1866, above cited; and is therefore overruled in so far as it holds accounts, or books of account, not assignable as collateral security for a debt owing by an insolvent assignor to the assignee without complying with the statutory requirements as to sworn inventory and schedule.

2. Two suits against the same debtor, the first brought by certain preferred creditors, and the second by other creditors, having been consolidated for trial, the opening and conclusion, whether treated as matter of right or of discretion, could be awarded by the court to the plaintiffs in the first suit, notwithstanding they were codefendants with the debtor in the second.

3. Touching other matters complained of as error, no cause for a new trial appears; the case, according to its substantial merits, having had a right result, both as to the range of questions submitted by the court to the jury for determination, and the findings thereon.

October 25, 1894. Argued at the last term.

Equitable petitions, etc. Before Judge FALLIGANT. Chatham superior court. June term, 1893.

Boykin, Seddon & Company and numerous others, on behalf of themselves and all other creditors of Epstein & Wannbacher who might come in and join with them, filed their petition against Epstein & Wannbacher and the members of that firm, and against S. Herman, Fanny Joseph, Sophie Lehman, I. G. Haas, S. Mann,

M. Boley & Son, I. Epstein & Brother, H. M. Selig, A. Ehrlich & Brother, the Savannah Grocery Company, Moore & Johnson, Miriau L. Lilienthal, Herman & Kayton, L. Steyerman & Brother, Rheinstrom Brothers, Bendheim Brothers & Company, Cook & Bernheimer, and Levy & Brother. It appeared from the petition, that the court had previously appointed a receiver and taken charge through him of the assets of Epstein & Wannbacher, as far as the receiver was able to do so, under a prior creditor's petition filed in said court against Epstein & Wannbacher by Samuel Herman, Fanny Joseph, Sophie Lehman, and Herman & Kayton, all of whom except the latter claimed to be secured by mortgages, the mortgages of the first two being of equal dignity and that of Sophie Lehman being a second mortgage. Epstein & Wannbacher having answered the petition of Samuel Herman and others, and in their answer having set out the names of various parties to whom Epstein & Wannbacher had assigned open accounts as collateral security, Herman et al. amended their petition and added said persons as additional parties defendant, to wit, Boley & Son, Epstein & Brother, Haas, Selig, Rheinstrom Brothers, Cook & Bernheimer, Bendheim Brothers & Co., Moore & Johnson. Various parties, claiming to be unsecured creditors of Epstein & W., were made parties plaintiff in the case of Herman et al., but were afterwards stricken as parties plaintiff in that case without affecting their status in the Boykin, Seddon & Co. et al. case. Various other persons were made parties plaintiff in the Herman et al. case, and afterwards stricken in that case upon their motion and made parties plaintiff in the Boykin, Seddon & Company et al. case. Cook & Bernheimer, claiming to be creditors of Epstein & W., were by consent and order of the court stricken as defendants from the Boykin, Seddon & Co. et al. case, and granted leave to intervene as plain-

tiffs, and many other parties plaintiff were made in the Boykin, Seddon & Co. *et al.* case, etc. Both of said petitions were called for trial at the same time and were tried together before the same jury, under an order passed at the preceding term, upon a motion made to consolidate them by Epstein & Wannbacher, Samuel Herman, Fanny Joseph *et al.* A special verdict was rendered in answer to questions propounded. Boykin, Seddon & Company *et al.* moved for a new trial, which motion was overruled, and they excepted.

In answer to questions suggested by S. Herman *et al.*, the jury found as follows: Epstein & W. are indebted to Samuel Herman in the amount of the demand note of August 25, 1890, for $24,247.34, as set out in his petition and foreclosure proceedings. He has paid the accommodation notes, aggregating $13,500, set forth in the mortgage foreclosed by him, and they owe him for the amount of these notes. The mortgage from them to him of August 25, 1890, is valid. Epstein & W. are indebted to Mrs. Fanny Joseph $5,500 principal, besides interest, on the two notes as set forth in her foreclosure proceedings and petition; and the mortgage from them to her of August 25, 1890, is valid. They are indebted to Mrs. Sophie Lehman in the amount of a note of $5,000, as set forth in the petition of S. Herman *et al.*, less the net collection under the assignment of accounts to her; and the assignment of accounts to her as security is a valid transfer. I. Epstein & Brother have paid as accommodation indorsers the notes set forth in their answer, aggregating $9,000, and Epstein & W. owe them for these notes, less the net collection under the assignment of accounts to them, which assignment of accounts to them as security is a valid transfer. Epstein & W. are indebted to Herman & Kayton $242.25 on open account, as set forth in the petition of S. Herman *et al.* Neither S. Herman, Mrs. Fanny Joseph,

v 94-48

Mrs. Sophie Lehman nor I. Epstein & Brother are guilty
of the charges of fraud alleged against them respectively,
in the petition of Boykin, Seddon & Company *et al.* The
receiver has sold the property covered by the mortgages
of S. Herman and Mrs. Fanny Joseph, since the pendency
of these proceedings, and the fund in court represents
the proceeds of said sales, as shown in the receiver's
report. The foreclosure proceedings of S. Herman and
Mrs. Joseph and the petition for injunction and receiver
filed by them and Mrs. Lehman and Herman & Kayton,
were instituted in good faith, for the enforcement of
their debts and securities.

The following were the answers by the jury to ques-
tions suggested by counsel for H. M. Selig *et al.*: H. M.
Selig has paid, as accommodation indorser, the notes
made by Epstein & W., set forth in the assignment of
accounts made on August 25, 1890, and in his answer,
aggregating $8,500, and they are indebted to him for
the amounts paid upon said notes, less the net collec-
tions under the assignment of accounts to him; and
said assignment of accounts to H. M. Selig as security
is a valid transfer. The same is true as to H. M. Boley
& Son, the amount in their case being $13,500; and Boley
& Son received as further security the money and notes
on the 25th of August, 1890, shown in their answer.
I. G. Haas has paid, as accommodation indorser, the
notes set forth in the assignment of accounts made to
him by Epstein & W. on the 25th of August, 1890, and
referred to in his answer. They owe him for the
amounts paid on these notes and for the debts for goods
sold and money loaned by him, as set out in said assign-
ment of accounts and his answer, said debts and accom-
modation indorsement aggregating $7,089.04, less the
net collections under the assignment of accounts to him.
Said assignment of accounts to Haas as security is a
valid transfer. Haas bought from Epstein & W., Au-

gust 25, 1890, goods to the amount of $1,120.46, in payment of an account due him of $343.21, and disbursed the balance of said sum at the request of Epstein & W. to their creditors, as set forth in his answer. He loaned Epstein & W. $2,700 August 23, 1890, and they repaid him this sum August 25, 1890. The Savannah Grocery Company bought in good faith from Epstein & W., on August 25, 1890, to the extent of $3,352.40 as set forth in its answer, and said goods were delivered to and paid for by the grocery company on that day, and the sale was a valid sale. A. Ehrlich & Brother bought in good faith from Epstein & W., August 25, 1890, coffee to the extent of $525.13 and other goods to the extent of $3,524, and these were valid sales. They paid on the same day to Epstein & W. $3,524, as set forth in their answer. They received the coffee, as alleged in their answer, and further received goods to the extent of $954, as set forth in their answer; and have not received the remainder of said goods so purchased, to wit, to the extent of $2,051.21. Ehrlich & Brother brought suit to the November term, 1890, city court of Savannah, against the Ocean Steamship Company, to recover said goods not received by them to the extent of $2,051.24; they obtained a verdict against that company June 30, 1891, and the cause was carried to the Supreme Court, and a new trial granted by that court. Neither H. M. Selig, I. G. Haas, the Savannah Grocery Company, Boley & Son nor Ehrlich & Brother are guilty of the charges of fraud alleged against them, respectively, in the petition of Boykin, Seddon & Co. *et al.*

The jury found, in answer to other questions submitted to them, in favor of Boykin, Seddon & Co. *et al.* and interveners in their petition against Epstein & W., for the respective amounts claimed by them, and found said amounts correct except a few irregularities noted in the original bill. They found in favor of the petitioners

and interveners in the suit of Boykin, Seddon & Co. *et al.*, against only Epstein & W., and the persons composing that firm, S. J. Epstein and G. Wannbacher. They further found that Epstein and Wannbacher had respectively withdrawn from their assets, failed to account for and wrongfully and fraudulently withhold $11,124.38 and $12,603.37, reduced by the following sums accounted for by Wannbacher: Paid Mrs. Joseph $2,000, S. Herman $1,500, and M. Boley & Son $3,052; and further stated in their verdict that they could not verify these figures, but, as nearly as could be ascertained from the books, considered them correct.

The motion for a new trial alleged, that the verdict was contrary to law and evidence; that it was not sufficiently definite and certain to authorize a decree; that the court did not submit to the jury all the issues in the case, and erred in refusing to submit a large number of questions offered by Boykin, Seddon & Co. *et al.*; that the court erred in awarding the opening and conclusion of the case to Herman *et al.*, and refused to allow this right to petitioners and interveners in the case of Boykin, Seddon & Co. *et al.*; and that the court erred in many specified portions of the charge to the jury, and in not giving numerous instructions as requested. The grounds material to be set forth here are:

That the court refused to charge thus: "Open accounts cannot be conveyed by way of preference, under section 1953 of the code of Georgia, to one creditor over another, except in payment of the debt; that is to say, they cannot be conveyed as collateral security. When sold in payment of the debt, the debt is extinguished; it no longer remains as a liability of the debtor; but when conveyed as collateral security, the debt remains intact and the creditor gets simply security therefor. This cannot be done under the law of Georgia permitting preferences; and hence the court charges the

jury that the assignments of open accounts in this case are illegal and void."

And that the court erred in the following charges:

"The point has been made that these various preferences in the form in which they are presented, constitute what is called an assignment under the laws of Georgia; and, the law requiring that in cases of such assignments there must be certain schedules filed and attached, that these papers fail entirely because of the failure to attach such schedules. I charge you as a matter of law, that that question will not enter into your consideration; and I charge you that this, the case presented, is not a case of assignment under the law of Georgia, and that the failure to attach schedules had no effect of itself upon the issues in this case; therefore you will completely leave that matter out of your consideration, so far as that point is concerned.

"These several preferences, mortgages and transfers must each stand alone upon its individual merits, and be determined each for itself by you upon the facts in evidence and the law as given you in charge by the court. It will be for you to say, and I consider that the issue really made in this case is, whether any or all of these preferences are fraudulent or not. If they are all fraudulent in your judgment, you will so declare. If some valid, and some fraudulent and void, you will state which are valid and which are fraudulent and void; and so with the alleged sales in this case.

"Another question submitted, and which I am called upon to decide, is the question of the validity of transfers of accounts as security for indorsements and for debts. I have considered that question upon the law; and I charge you that if such transfer or assignment of accounts as security for a debt is in writing, manifesting the intention of the parties, it is sufficient under the law."

Charlton, Mackall & Anderson, R. R. Richards, Harden, West & McLaws, Lawton & Cunningham, Saussy & Saussy, O'Connor & O'Byrne, W. R. Leaken, W. C. Hartridge and T. D. Rockwell, for plaintiffs in error.

Garrard, Meldrim & Newman and Denmark & Adams, *contra.*

Lumpkin, Justice.

1. Section 1954 of the code of 1863 made void, as to creditors, "Every assignment or transfer by a debtor, insolvent at the time, of real or personal property of any description to any person, either in trust or for the benefit of himself or any one or more of his creditors, or any person appointed by him, to the exclusion of any other creditor in the equal participation of such property, unless such assignment or transfer [was] a *bona fide* sale, in extinction, in whole or in part, of the debt of the purchaser, and without any trust or benefit reserved to the seller or any person appointed by him." It will thus be seen that the assignment or transfer of anything, except for actual payment, in whole or in part, of an existing debt, or else for the equal benefit of all creditors, was prohibited. Consequently, according to the provisions of that section, there could be no transfer or assignment of accounts, or books of account, to one creditor as collateral security for his demand alone, nor to any number or class of creditors, to the exclusion of others.

Section 1955 of the same code was as follows: "A debtor may prefer one creditor to another, and to that end he may *bona fide* give a lien by mortgage, or other legal means, or he may sell in payment of the debt, or he may transfer negotiable papers as collateral security, the surplus in such cases not being reserved for his own benefit or that of any other favored creditor to the exclusion of other creditors." By virtue of this section, a debtor, irrespective of his solvency or insolvency,

had the right to prefer one creditor to another, and to this end, might create in favor of the preferred creditor a lien by mortgage, or other legal means; or, might transfer to such creditor negotiable papers as collateral security; or, as provided in the preceding section, a debtor might make payment by an actual and *bona fide* sale. Thus there were three modes of preferring creditors by an insolvent debtor: the first, by sale in payment or part payment; the second, by mortgage or other legal lien; and the third, by the transfer of *negotiable* papers as collateral security.

So far as non-negotiable *choses in action* are concerned, the only question which could arise under the language of section 1955 is, whether what seems to have been made impossible by the preceding section, viz: an assignment of the same as mere security for one creditor alone, was, under the name of creating a lien, rendered possible by section 1955.

Prior to the code, the assignment of accounts would create an equitable lien; but by the use of the words "other legal means," there is little room for doubt that the section last mentioned contemplated legal, and not equitable, liens. Hence, properly understood, there was not, for any reason yet suggested, any real incongruity between the two sections in the respect indicated.

The next consideration is, what effect should be given to section 2224 of the code of 1863 (the language of which is exactly the same as that used in section 2244 of the present code), which makes all *choses in action* arising upon contract assignable so as to vest the title in the assignee? That section certainly does not contemplate the creation of a lien merely, but a change of ownership relatively to the legal title.

The conclusion from the foregoing is, that while the terms "negotiable papers" should be construed as comprehending anything which the code in any of its pro-

visions denominates negotiable, there was, prior to the passage of the act of February 24th, 1866 (Acts of 1865–6, p. 29), no way to prefer a single creditor by making accounts mere security for the payment of his demand; accounts could not, by assignment or otherwise, be made available as collateral security for creditors, unless it was done for the benefit of all creditors alike.

Had the case of *Hale-Berry Company* v. *Diamond State Iron Company et al.* (94 *Ga.* 61) depended alone upon the code of 1863, we think the decision therein rendered would have been a correct exposition of the law applicable; but taking into consideration the modification of the provisions of the old code made by the above cited act of 1866, we are now of the opinion that the judgment rendered in that case is, to the extent indicated in the first head-note of this opinion, unsound. The provisions of the act of 1866 are embodied in paragraph 1 of section 1952 of the present code, that paragraph having been, by the act in question, substituted for paragraph 1 of section 1954 of the old code. In endeavoring to arrive at a correct solution of the question presented, we went back to that code to see how the law stood under its provisions, and concluded it was as has been stated above; but in tracing it into the present code, we somehow, as we now think, failed to grasp to the full extent the changes made by the act of 1866 in the law existing at the time of its passage. A comparison of the two paragraphs just mentioned will show that, in the latter, *"choses in action"* (which, of course, comprehend open accounts and other claims embraced in the descriptive words "negotiable papers") are specially designated; whereas, the terms *"choses in action"* do not appear in the paragraph cited from the old code. It may be remarked, however, that the words " real or personal property of any description " would, perhaps, be suffi-

ciently comprehensive to include *choses in action*, without special mention. But the great change made by the act was, that while, under the old law, an assignment or transfer save by absolute sale for the benefit of creditors was void unless all the creditors of the debtor were given an equal participation in the proceeds of the property, under the new law an insolvent debtor could lawfully transfer or assign any property, including *choses in action*—whether negotiable papers or not—for the benefit of a single creditor, provided only no trust or benefit was reserved to the assignor or any person for him.

In dealing with the *Hale-Berry* case, we were too much influenced by section 1953 of the present code, which is in the same language as section 1955 of the code of 1863; and as this section provides for the transfer as collateral security of negotiable papers only, we came to the conclusion that non-negotiable papers could not be transferred for this purpose. But we did not give proper recognition to the alteration in the law of the whole subject-matter, arising by necessary implication from the amendment made by the act of 1866, appearing in section 1952, in the respects indicated. The two sections must be read and construed together; and although, after the passage of that act, the language of section 1953 was left precisely the same as formerly, its restrictive effect was utterly changed, so far as non-negotiable *choses in action* are concerned, because of the amendment which the legislature saw fit to make in the matter and scope of the preceding section. The effect of this amendment was to reverse the general policy of the first code, and by implication to allow an insolvent debtor to make preferences amongst creditors at pleasure by legal assignment or transfer, provided no trust for himself, or to any person for him, be reserved. This is the law now, and thus it has stood ever since the act of 1866 was enacted. By virtue of section 2244 of the

code of 1882, which, as already said, corresponds to section 2224 of the first code, the owner may assign any chose in action arising upon contract, so as to vest the title in the assignee; and his insolvency, since the change of policy brought in by the act of 1866, being no obstacle to assigning such choses in action as collateral security, they are no less assignable for that purpose than are negotiable securities. The modes of giving preference enumerated in section 1953 of the present code still remain, but to them is added, by virtue of the act of 1866, any assignment or transfer whatever, otherwise lawful, which does not involve some reservation of trust or benefit to the assignor or to another for him. It was correctly ruled in *Powell, Brother & Co.* v. *Kelly Brothers & Porter*, 82 *Ga.* 1, that the object of the act of 1866 was to change the prior policy of the State touching the preference of creditors, and that the act allowed a debtor to prefer one creditor to another; also, that it repealed by implication the latter part of section 1953 of the code, the repealed words being, "or that of any other favored creditor, to the exclusion of other creditors." These words were appropriate to the general scheme of non-preference which the first code had in view, but are wholly inconsistent with the reverse scheme which the act of 1866 introduced and intended to legalize. In its last analysis, the right to assign or transfer non-negotiable papers for the purpose of securing one creditor to the exclusion of others, does not rest in any degree upon section 1953 of the code. It would be precisely the same without that section as with it. Its true and only source (save as to the mere element of assignability for passing title) is the act of 1866, and the substitution by that act of one single restriction upon assignments and transfers in place of the different and more numerous restrictions imposed by section 1954 of the first code.

We can find no reason satisfactory even to ourselves for falling into the error which we now feel was committed in the *Hale-Berry* case, but we are glad that it was detected so soon, and this opportunity given to recall it. When the enormous amount of work we have to do and the want of time at our command are taken into consideration, some excuse for this and other shortcomings may be accorded us, but we neither expect nor ask complete justification for a mistake like this.

So far as the case of *Baer* v. *English & Co.*, 84 *Ga.* 403, is concerned, as it was correctly decided on its facts, it presents no essential conflict with anything we now rule. The suggestion in the opinion delivered in that case, that "An account, not being negotiable paper, cannot, we think, be transferred as collateral security for an existing debt to the prejudice of another existing creditor," was toned down and qualified by what followed it in the next sentence, and was not meant to be an adjudication of the question now before us. This will be apparent to any one who will read the whole opinion in a spirit of candor. By oversight, section 1953 of the code was quoted entire in that opinion, without any allusion to the repeal of the concluding words by the act of 1866, or to the previous case in 82*d Ga.*, cited *supra*, by which the repeal of these words was declared and recognized.

It appears from the record of the case now under consideration, that in every instance where Epstein & Wannbacher assigned to creditors open accounts as collateral security for their respective demands, the assignment was made directly to the creditor; and hence, no trust was created, there being no person other than the assignee taking any benefit under it. Therefore, the assignment acts of 1881 and 1885 do not apply, and decisions rendered by this court with reference to those acts are not pertinent, and need not be noticed. It does not appear that, in making these assignments, any bene-

fit was reserved to the assignors, or to any one for them; and consequently, should there in any case be a surplus, the same would, by operation of law, be subject to the payment of Epstein & Wannbacher's other outstanding indebtedness.

2. As will have been seen by reference to the reporter's statement, the first petition against Epstein & Wannbacher was filed by Herman and others, who were preferred creditors of the defendants. Subsequently, a number of persons were made parties defendant and a number of other persons parties plaintiff to this case. Afterwards, the petition of Boykin, Seddon & Co. and many others, on behalf of themselves and all other creditors of Epstein & Wannbacher, was filed against the latter, their preferred creditors and others. Some of the persons who were parties plaintiff in the first case withdrew from it and were made parties plaintiff in the second. The two cases were consolidated for trial, and the court allowed the counsel for Herman and others the opening and conclusion, over the objection of counsel for Boykin, Seddon & Co. and their associates.

Inasmuch as Herman and others instituted the original petition which brought about all the litigation which afterwards arose over the affairs of Epstein & Wannbacher, we think the court could, with great propriety, award them the opening and conclusion. If they were not, as matter of right, entitled to this advantage, it was at least within the discretion of the trial judge to allow it to them, and in so doing his discretion was not abused. This is true although Herman and his associates, the preferred creditors, were made codefendants with Epstein & Wannbacher in the petition filed by the general creditors. We cannot see that this fact at all affects the merits of the question as to who should have the opening and conclusion.

3. The record in this case is exceedingly voluminous.

It covers very nearly six hundred pages of closely type-
written matter. The motion for a new trial contains
forty-seven grounds. It presented a large number of
questions for consideration and determination by the
trial judge, and upon his overruling of the motion, the
entire case was brought here for review. We have given
to it a careful, deliberate and most anxious examination.
It has occupied the attention of the court for many days,
and notwithstanding the relative brevity of this opinion,
it must not be supposed that any feature of the case has
been slighted or overlooked. We have faithfully, and
to the best of our ability, considered and discussed all
the material questions involved. We have not, however,
after patient and most thorough investigation, found it
necessary to definitely decide a large number of them,
because, in our opinion, the verdict was right, no matter
what might be the law as to many of these disputed
issues. The evidence was clear and convincing that the
claims held by all of the preferred creditors were *bona
fide* and honest debts. There was not sufficient proof
to authorize a jury to find that there was any collusion
between these preferred creditors and their debtors, or
that any conspiracy existed among them having for its
purpose any plan or scheme to delay, hinder or defraud
other creditors. Nor was there sufficient evidence to
warrant the jury in finding that the preferred creditors
knew of, or participated in, any fraudulent design or in-
tention on the part of Epstein & Wannbacher to delay,
hinder or defraud their other creditors, if such a pur-
pose existed at all on the part of the debtors. We also
think the evidence fully authorized the jury in finding
that the purchases made by the Savannah Grocery Com-
pany and other parties were fair and free from fraud.
The questions submitted by the court to the jury were,
when considered with reference to the entire charge,
sufficiently full to cover all the absolutely essential

issues.  We do not, of course, mean to assert that no error at all was committed.  Indeed, taking into consideration the magnitude of the case and the great number of intricate and complicated questions presented, it would be little short of a miracle if any judge could, through a *nisi prius* trial occupying about a month, be perfectly correct in every ruling.  We do mean to say that, in our opinion, there was no substantial error requiring another trial.  We deem it not inappropriate to add, in this connection, that our very learned and accomplished brother of the Eastern circuit handled this case, in all its branches, with the most marked ability and skill.  The record before us presents high evidence of his wisdom and efficiency as a judge.

Had we found it necessary to rule upon all the numerous questions presented in the argument before us, we would have endeavored faithfully to do so, and would not shrink from preparing an opinion embracing as full a discussion of them as the time at our command would possibly allow; but to do this is not requisite, because we are convinced that the verdict and judgment rendered are about as nearly correct as any court or jury could render.  The jury in this case was selected from the grand jury list.  They have done their work well; it has had the sanction of the trial judge, and we are satisfied to allow their verdict, and the decree rendered upon it, to stand.          *Judgment affirmed.*