The Fidelity Banking and Trust Company *v.* The
Kangara Valley Tea Company *et al.*, and *vice versa.*

1. The general creditors of an insolvent mercantile firm having filed
against it an equitable petition under the insolvent traders' act,
by virtue of which a receiver was appointed and the assets of the
firm converted into cash; and a mortgage creditor of the firm
having filed an intervention praying the equitable foreclosure of
the mortgage and its satisfaction out of the fund in the receiver's
hands; after which, by an amendment to the original petition,
this mortgage was attacked as being fraudulent and void: in the
trial of the issue thus made as to the validity of the mortgage,
there was no error in allowing the original parties plaintiff to open
and conclude.

2. While the charges complained of may not have been in every re-
spect strictly pertinent and applicable, they contain no error
against the intervener which requires the granting of a new trial;
the requests submitted, so far as legal, were substantially covered
by the general charge, which was, as to the matter embraced in
the requests, fully as favorable to the intervener as this party had
a right to demand; the evidence, though decidedly conflicting, was
fully sufficient to warrant the verdict; and upon a careful review
of the entire case, no reason appears for interfering with the dis-
cretion of the trial court in refusing to set it aside.

December 4, 1894.

Equitable petition. Before Judge Lumpkin. Fulton
superior court. March term, 1894.

W. M. Everett and J. S. Bigby, for the bank.

Arnold & Arnold, Rosser & Carter, Glenn & Mad-
dox, King & Anderson, Glenn, Slaton & Phillips, J. L.
Hopkins & Sons, W. R. Brown, A. A. Meyer and Bishop
& Andrews, *contra.*

Lumpkin, Justice.

1. The Kangara Valley Tea Company, and other cred-
itors of the firm of Dawson, Bergstrom & Co., filed a

petition under the insolvent traders' act, by virtue of which a receiver was appointed and the assets of the firm were by him converted into cash. In the original petition it was alleged, in general terms, that the partnership had recently given a mortgage to the Fidelity Banking & Trust Company, but that this mortgage was invalid because it had been executed by one partner only, over the protest of the others. The banking company voluntarily, by intervention, became a party to the case, and prayed the equitable foreclosure of its mortgage and payment of the same out of the fund in the receiver's hands. After this had been done, the petitioners, by an amendment, specifically attacked this mortgage as being fraudulent and void, setting forth the facts upon which this charge was based. When the case came on for trial, the main issue in controversy was as to the validity of this mortgage. The banking company claimed the right to open and conclude, but the court, over its objection, allowed the original parties plaintiff to do so.

There was no error in this action of the court. These plaintiffs were the movants in the litigation from its very beginning, and this fact, of itself, would ordinarily entitle them to open and conclude. But it further appears that at the trial they assumed the burden of proof, and, as the result shows, carried it successfully. So on the whole there can hardly be a doubt that they were entitled to open and conclude. The case of *Boykin, Seddon & Co. et al.* v. *Epstein et al.*, 94 *Ga.* 750, may be cited as pertinent in this connection.

2. Exception was taken to the following charges of the court:

"A debtor may prefer one creditor to another, and to that end, he may *bona fide* give a lien by mortgage, or other legal means, or he may transfer negotiable papers as collateral security, the surplus in such cases not being reserved for his own benefit. If a surplus is reserved

for his own benefit, it destroys the validity of the mortgage so given.

"If you believe from the evidence that the mortgage in question was executed by A. M. Bergstrom, one of the members of the firm of Dawson, Bergstrom & Co., to the Fidelity Banking & Trust Company, and was intended to delay or defraud creditors, and such intention was known to said banking and trust company, then such mortgage would be void, and it would be your duty to find that it be set aside. If you believe from the evidence that the mortgage in question was executed by A. M. Bergstrom, a member of the firm of Dawson, Bergstrom & Co., and was partly intended to delay or defraud creditors, and partly with the intent to secure a debt, and the Fidelity Banking and Trust Company had knowledge of the intention to defraud creditors, or had grounds for a reasonable suspicion that such intent existed, said mortgage would be void, and you should find against it accordingly.

"Every conveyance of real or personal property, or estate, by writing or otherwise, and every bond, suit, judgment, execution or contract of any description, had or made with the intention to delay or defraud creditors, and such intention known to the party taking, is considered in law as fraudulent against creditors, and as to them null and void.

"But if you believe from the evidence that the giving of the mortgage and the conveyance of the real estate were parts of the same agreement, and that there was an intention known to both parties, Bergstrom and the bank officials, to delay or defraud creditors by saving property for Bergstrom from his creditors, the whole transaction would be avoided thereby as against creditors, and this mortgage which is now involved would accordingly be avoided as a part of the transaction. If this mortgage was executed by A. M. Bergstrom, a mem-

ber of the firm of Dawson, Bergstrom & Co., to the Fidelity Banking & Trust Company, for the purpose of securing the banking company as a creditor, and as a part of the same agreement an agreement was made by which certain other property was to be conveyed by Bergstrom to the bank, which the bank agreed to hold for said Bergstrom, and save from his creditors, and eventually return to him in whole or in part, and that there was an intention on the part of Bergstrom to delay or defraud his creditors, of which intention the bank had notice or grounds for reasonable suspicion, in such event the mortgage would be void as against other creditors, and you would find against it accordingly."

Error was assigned upon these charges, on various grounds. One was, that there was no contention on the part of the plaintiffs that any surplus was reserved in the mortgage itself, and there was no issue in the case based on the ground that any such reservation was made in the mortgage. Another was, that certain portions of the charges complained of were not authorized by the evidence; and as to the last above quoted charge, it was insisted that it was erroneous because it excluded from the minds of the jury any view of an alleged original agreement on the part of the firm to secure their indebtedness to the banking company whenever security should be demanded, and because "if transactions which are partly valid and partly fraudulent are clearly severable (if any were fraudulent), a court of equity will separate the two and give force to that which is valid."

There may be some expressions in the charges complained of, not strictly applicable; but when considered with reference to all the facts of the case, they were, in the main, pertinent and substantially correct. The mortgage itself did not, of course, contain any reservation. for the benefit of the mortgagors, and it is true that the plaintiffs did not so contend. They did contend, how-

ever, and the contention was supported by evidence, that the mortgage alone did not fully evidence the entire transaction between the insolvent partnership and the banking company, but that there were dealings between these parties with reference to certain real estate, as a result of which the mortgage was given, in which dealings a fraudulent reservation was made for the benefit of one of the mortgagors. Certainly, if all these transactions, including the giving of the mortgage, were only parts and parcels of a general scheme, and one of the purposes of that scheme was to prevent property belonging to Bergstrom from being reached by his creditors, and to eventually return the same to him, the mortgage itself was tainted with fraud, and void as to creditors. A general fraudulent scheme of this kind cannot be separated into parts that are valid, and into other parts that are not so.

The banking company, among other things, contended that before any credit was extended by it to the firm of Dawson, Bergstrom & Co., an oral agreement was made by the firm, in which all the members participated, that security by mortgage would be given whenever demanded, and that accordingly, although at the time the mortgage was actually given it may have been done against the protest and over the objection of one of the members, the mortgage would nevertheless be binding upon the firm, because of the above mentioned original agreement made by the firm as an inducement to the banking company to extend credit in the first instance. The court was requested to charge to this effect, and also to charge generally, without qualification, that one partner may, notwithstanding the protest of another, mortgage the firm's assets, consisting of personal property, to secure a valid existing debt of the firm. This latter request was, we think, properly refused. It will be readily perceived it cannot be good law, because it

might lead to great perplexities and inextricable confusion in the management of a partnership business, and it would oftentimes happen that to carry out such a doctrine would be utterly impracticable.   One member of a firm might desire to give a particular creditor a preference by mortgaging to him the entire personal property of the firm, while another member might have a similar desire as to another creditor, and each, independently of the other's protest or objection, might pursue his own course in the matter.   If, under such circumstances, each simultaneously executed a mortgage in the firm name to the creditor he wished to favor, who could say which creditor had the better lien?   Nor, in such case, would it do to hold that the two liens were of equal rank, for this would be to defeat the very purpose each member of the firm had in view.   The true rule is, that the acts of partners binding the other members of the firm rest on the doctrine of agency, and there is an implied authority from all to each that one may do whatever is legitimately within the scope of the partnership business and thus bind the firm, when no express objection as to the particular matter in hand is made by any member of the firm.   To hold that one partner can execute a mortgage binding the assets of the firm against the protest of a fellow-member, would be to allow the former to deprive the latter of his right to "have joint possession of its effects, to collect and apply its assets, to contract or otherwise bind the firm in matters connected with its business," a right which is reserved to each partner alike under section 1904 of the code.

There was evidence introduced in behalf of the banking company, strongly tending to show that there was a previous agreement to give security whenever demanded, made with the consent of all the members of the firm; and in this connection the court instructed the jury, in effect, that if this were so, a mortgage subsequently

given by one member only of the firm would bind them all, even if one or more of them did actually object to or protest against the giving of the mortgage.   We have not used the precise language of the judge, but have stated its meaning as the jury must have understood it, taking into consideration all he said in this connection. We are not prepared to say the instructions thus given were sound, but certainly they were as favorable to the banking company as it had any right to demand, and fully covered its request to charge, to which reference was first above made.

Other assignments of error in the motion for a new trial alleged that the verdict was contrary to certain specified portions of the judge's charge.   This is only another way of alleging that the verdict was contrary to law, and does not, therefore, require special comment.

After a careful review of the whole case, we find that the issues involved were fairly submitted to the jury, and that the verdict was fully warranted by the evidence. No reason for interfering with the discretion of the trial judge in refusing to grant a new trial appears.

*Judgment affirmed.   Cross-bill of exceptions dismissed.*