## GREENE COUNTY *et al. v.* WRIGHT, comptroller-general.

Stock in a non-resident railroad corporation owned by a domestic railroad company is taxable for county and municipal purposes in that county and city wherein the principal office of such corporation is fixed by its charter or by law. Such property is "located" property in the meaning of the law of this State providing the machinery for distributing the property of railroad companies for county and municipal taxation.

Argued June 15,—Decided August 17, 1906. Presiding Justice Cobb and Justice Lumpkin being disqualified, Judges Freeman and Littlejohn, of the Coweta and Southwestern circuits, were designated to preside instead.

Petition for mandamus. Before Judge Pendleton. Fulton superior court. March 20, 1906.

The County of Greene, the County of Taliaferro, the County of Oglethorpe, the County of Walton, the County of McDuffie, the County of Columbia, the City of Union Point, the City of Greensboro, and the Mayor and Council of the Town of Crawfordville, filed a petition against W. A. Wright as comptroller-general of the State, in which is set up, in substance, that they respectively are bodies corporate under the laws of Georgia, being counties and municipalities thereof; that the Georgia Railroad and Banking Company, of this State, whose railroad is wholly within this State, runs through the territorial limits of each of the petitioners and has real and personal property in the limits of each; that under the law said company is subject to taxation in each of the petitioning counties and municipalities according to the tax rates fixed for them, severally, upon such of its property as is located therein, and also upon such portions of its rolling-stock and other personal property as the property located in each county or municipality bears to the whole located property of said company, except such as is lawfully exempt; that for the years 1903, 1904, and 1905 said company made returns to the comptroller-general, giving the information required by the Political Code, §§ 784, 726, as to the value of its whole property, the value of its located property in each county and municipality through which it runs, and the value of its rolling-stock and other personal property; that for the years prior thereto no such returns were made; that on the first day of April, 1895, and on the first day of April of each year since, said company held and owned in the State of Georgia fifteen thousand shares of the capital stock of the Western Railway of Alabama, a corporation

of the State of Alabama; that said stock was and is personal property and taxable under the laws of this State in the hands of said Georgia Railroad and Banking Company; that said stock is not located in any county, but is a part of "the other personal property" of said company required to be apportioned for taxation to the several counties and municipalities through which the railroad runs, and in all of which it equally resides for purposes of taxation; that for the years of 1895 to 1905, inclusive, it was the duty of the comptroller-general (if no sufficient returns were made in the years 1903, 1904, and 1905) to assess and fix, from the best information he could procure, the value of the property of the company located in each of the petitioning counties and municipalities, the value of all its located property, and the value of its "rolling-stock and other personal property" not exempt, and especially of said shares of stock, and apportion the value thereof for taxation, as provided by law, to the said counties and municipalities, the respective tax rates of each having been duly certified to him as provided by law, for each of said years; that it was his duty to apply their several tax rates to the proportion of the value of said shares of stock assigned, respectively, for each of said years, and to ascertain the amount of tax due each, and, upon default in payment, to issue fi. fas. therefor in the name of the State and to enforce the same as fi. fas. are enforced for taxes due the State; that demand was duly made upon him to perform said duties, and issue fi. fas., if the taxes were not paid when demanded, and he refused to do so; that petitioners are entitled, under the law, to have him perform these duties, and, having no other specific remedy, pray that the writ of mandamus issue, requiring him to proceed to assess from returns made, and if no return, then from the best information he can procure, the said 15,000 shares in the Western Railway of Alabama, for each of said years, and to apportion to them, and others who may be entitled, such part of the value for each of said years as they respectively may be entitled to in the ratio that the value of the property of said company located in each bears to the whole located property of the company, to apply such apportionments to the respective tax rates of each as certified to him, to notify the proper authorities of the company of the amount of tax due each, and, upon default of payment, to issue fi. fas. therefor.

The defendant answered, admitting, in the main, the facts set up

in the petition. He denied that the words "rolling-stock and other personal property" included for distributive taxation the 15,000 shares of stock, alleging that such shares are owned by the Georgia Railroad and Banking Company as outside capital and investment, in nowise connected with the railroad or its operation or use thereon, and that such shares are taxable, as the property of like character of other citizens of the State, at the domicile of the owner. The Georgia Railroad and Banking Company has never made any return to him of said shares for taxation, but on the contrary that company has denied that said shares are subject to taxation in Georgia. He insists that the averment in the petition that said stock is not located in any county, but is a part of the other personal property of the company and required to be apportioned for taxation to the several counties and municipalities through which the railroad runs, raises a question of law; and avers that said shares are not included as a part of the railroad property required to be apportioned, for the reason that it does not belong to that class of property required to be distributed. He denies that it is his duty to issue fi. fas. or to apportion the property as prayed for by plaintiffs.

Upon the petition and answer the case was heard by the judge, who denied the application for the writ of mandamus, holding that "the stock in question, though intangible personal property, had a situs, situation, or location for taxation in Richmond county, the domicile of the owner, which was not changed by the act of 1889. The legislature had the right in the taxation of railroads to have changed it for the purpose of taxation, but not having done so by that act, as construed by our Supreme Court, it is to be considered as located property."

The plaintiffs assign error on this judgment.

*S. H. Sibley, J. D. Kilpatrick, J. T. West, J. B. & N. P. Park, Seaborn Reese,* and *E. P. Davis,* for plaintiffs.

*John C. Hart, attorney-general, Boykin Wright,* and *Smith, Berner, Smith & Hastings,* for defendant.

FREEMAN, J. (After stating the facts.) Prior to the passage of the act of 1889 (Acts 1889, p. 29) now embodied in the Political Code, §§ 784 et seq., the property of railroad companies in this State could not be subjected to taxation for county purposes, except that under the act of 1883 (Acts 1882-3, p. 39) the property

of such companies not used in the conduct of its usual and ordinary business was made taxable by counties and municipalities wherein such property was located; and prior to the act of 1890 (Acts 1890-1, p. 52) now embodied in the Political Code, §§ 725 et seq., municipalities could collect no tax of such corporations except as was provided by the act of 1883, cited above. *Staten* v. *Savannah, Florida & Western Ry. Co.*, 111 *Ga.* 803, and cit.; *Georgia Railroad & Banking Co.* v. *Wright*, 125 *Ga.* 589. The purpose of the acts of 1889 and 1890 was to subject all the property of railroad corporations, not exempt by law, to county and municipal taxation, and to provide the necessary machinery to accomplish this purpose. As the same principle controls the construction and application of these two acts (*Sparks* v. *Macon*, 98 *Ga.* 301), the following discussion will be confined to the act of 1889, subjecting railroad property to county taxation, the conclusions being applicable to the act of 1890, subjecting railroad property to municipal taxation. Section 784 requires a return to be made by these corporations to the comptroller-general, showing: "First, the aggregate value of the whole property of said railroad company; second, the value of the real estate and track-bed of said company; third, the value of the rolling-stock and all other personal property of said company; fourth, the value of the company's property in each county through which it runs." This return clearly embraces all the property of these companies, both real and personal. It embraces tangible personal property and intangible personal property. It embraces realty and personalty used in the conduct of their usual and ordinary business, and also realty and personalty not so used. The act is exhaustive on the subject of taxing these properties for county and municipal purposes. The act of 1883, requiring a return by railroad companies of property not used in the conduct of their usual and ordinary business, to the tax-receivers of the counties and municipalities, was repealed by the acts of 1889 and 1890. The codifiers took this view and did not incorporate this act in the Code of 1895. This is expressly so held in the case of *Georgia Railroad Co.* v. *Wright*, supra.

After securing the return required to be made by section 784, the next step required to be taken by the comptroller-general (§ 786), after receiving the tax levies as provided by section 785, is to "assess the amount of each and every railroad company's

property in each and every of said counties in the following manner: First, it shall be assessed upon the property located in each county, upon the basis of the value given by the returns. Second, the amount of tax to be assessed upon the rolling-stock and other personal property is as follows: As the value of the property located in the particular county is to the value of the whole property, real and personal, of said company, such shall be the amount of rolling-stock and other personal property to be distributed for taxing purposes to each county." These provisions of the act of 1889, and especially that portion thereof embraced in section 786, quoted above, have been interpreted and construed in the well-considered case of *Columbus Southern Railway Company* v. *Wright,* 89 *Ga.* 574. In that case the court interprets clause "Second" above as having the meaning it would have if it had been written and enacted as follows, the words italicised being inserted: Second, the amount of tax to be assessed upon the rolling-stock and other *unlocated* personal property is as follows: As the value of the property located in the particular county is to the value of the whole *located* property, real and personal, of said company, such shall be the amount of rolling-stock and other *unlocated* personal property to be distributed for taxing purposes to each county. That this construction was essential in order that the act could be upheld will appear from this language used by the court: "We have long and anxiously studied and examined this act, and, being convinced that we understand its true intent and meaning, we do not hesitate to give effect to that intent by adopting the construction stated. The law is too wise, too just, and too important to be defeated by sticking in the bark and adhering to the literal meaning of words, when by so doing we would not only set at naught the legislative will, but impute to our lawmakers the folly of making a provision at once mathematically absurd and legally impracticable." As a result of this construction the court says further: "The act seems to contemplate that a railroad has two kinds of personalty, 'located,' having a fixed and actual situs or abiding place for the time being, and 'unlocated,' being movable like rolling-stock and frequently shifting its place. Of course the realty is absolutely fixed and immovable, and always remains so. The scheme of the act is to tax the located property of the railroad, real and personal, in each county where it is situated, at the county

rate of taxation of force in that county, and to apportion the transitory, frequently moving personalty, in fair proportion among the several counties. This class of property may be fairly said to be situated at one place as well as another, or to 'reside,' if that word is allowable, along the entire length of the road. Having no fixed situs, it is absolutely right to apportion it, and that is really all that could be appropriately done with it for taxing purposes." It clearly appears, from the construction thus placed upon the act of 1889, that the only question for us to determine in this case is whether the 15,000 shares of the capital stock of the Western Railway of Alabama, held and owned by the Georgia Railroad and Banking Company, belongs to the class of "located" property or to the class of "unlocated" property. If it is "located" property in the meaning of the law as construed by this court, then the contention of the comptroller-general is correct, and it is taxable in the county and city where located. If it is not "located" property, then it falls in the class of "unlocated," and should be apportioned to the several counties and cities through which the road runs.

The identical stock in question is personal property (Civil Code, § 3070), and is taxable in this State. *Georgia Railroad Co. v. Wright,* 124 *Ga.* 596; Wright *v.* L. & N. R. R. Co., 195 U. S. 219. If it is taxable by the State, then it certainly is subject to county and municipal taxation. Political Code, §§ 785, 725. The stock in question is intangible personal property; a chose in action. The general rule is that bills, notes, etc., have a situs for taxation at the domicile of the creditor. Political Code, § 776; *City of Augusta v. Dunbar,* 50 *Ga.* 393; 27 A. & E. Enc. L. (2d ed.) 928. Prior to the act of 1858 (Acts 1858, p. 105, Political Code, § 776) the rule in Georgia was different. *Bridges v. Griffin,* 33 *Ga.* 113. In *City Council v. Dunbar,* supra, the court says: "But the current of authorities, as to stocks, bonds, and notes for money very decidedly fixes their locality at the residence of the owner of them. At any rate this is true under the authorities for purposes of taxation." In *Wright v. Southwestern R. Co.,* 64 *Ga.* 738, this court held that stock in railroads without the limits of this State is not taxable here. This case adjudicated merely that the situs of such stock, for taxable purposes, was in the State where the road lies. This rule was changed by the act of 1885 (Acts 1884-5, p. 30).

The act of 1885 is still the law, although not incorporated in the code. See *Georgia Railroad* v. *Wright,* 124 *Ga.* 607, 608.

The word "situs" means, site, situation, location, a place where a thing is.  25 A. & E. Enc. L. (2d ed.) 1071.  In *City Council* v. *Dunbar,* supra, the court, in dealing with intangible personal property for purposes of taxation, used this language: "This can only be [that choses in action are taxable in this State] on the idea that the locality of such property is with the owner of it."  In the case of *Trustees* v. *Augusta,* 90 *Ga.* 648, the court says: "In the absence of statutory provisions to the contrary, choses in action follow the person of the creditor."  An exception to this rule can be found in the case of *Armour Packing Co.* v. *Augusta,* 118 *Ga.* 552, the court holding that, "Choses in action in the hands of an agent of a non-resident corporation doing business in a municipal corporation of this State, and which were received in the course of business so conducted," are taxable by such municipality.  In that case the general rule is recognized that the situs of intangible personal property for taxation is-at the domicile of the owner, the court at the end of the opinion saying: "The right of this State or one of its subordinate political divisions to tax all the intangible property of a person resident in this State or a domestic corporation, at the place of residence of such person or at the principal office of such corporation, is not involved in this case."  Without citing further authorities on this point we conclude that intangible personal property has a situs for purposes of taxation at the domicile of the owner and is there subject to taxation for State, county, and municipal purposes, and that this was the law at the time of the passage of the act of 1889.  It was at the domicile of the owner in this State that it was located, and there and there alone could it be found by the tax officer.  We can perceive no difference in principle, so far as the purpose in view is concerned, between tangible and intangible personalty.  One has form, occupies space, is tangible; the other has none of these characteristics, but is nevertheless fixed and located for taxation with as much certainty and definiteness as if tangible.  The act (§ 776) says: "First, it shall be assessed on the property located in each county."  The word "located" was not introduced by judicial construction, but by the legislature, and no hint is given that it refers only to realty and tangible personalty.  The word is broad enough to include

realty and personalty both tangible and intangible. It also in-
cludes property which is used for railroad purposes and property
not so used.

While the precise question we are now considering was not before
the court in the case of *Georgia Railroad Co.* v. *Wright,* 125 *Ga.*
589, the court, in discussing the question before it relating to this
stock, said: "If the shares of stock in the foreign corporation
upon which it is sought to collect a tax in this case had been owned
by an individual residing in Richmond county, he would have been
required to return the same for taxes to the tax-receiver at their
true market value, and also to the proper officer of the City of
Augusta.    That is, the location of the property would be in the
county and city where the owner resided.  Being owned by the
plaintiff, a corporation whose principal office is in the City of
Augusta, it is taxable in the county and municipality where the
company resides; that is, in the place where its principal office is
located."   The residence of a domestic corporation is where its
principal office or place of business is situated.  *McCall* v. *Central
Ry. Co.,* 120 *Ga.* 604.   The principal office of the Georgia Railroad
and Banking Company is fixed by an act of the legislature in the
City of Augusta, in the County of Richmond.  Acts 1841, p. 174.
We hold, therefore, that the 15,000 shares of stock of the Western
Railway of Alabama, owned by the Georgia Railroad and Banking
Company, is located property in the meaning of the act of 1889,
and is taxable in the County of Richmond and City of Augusta,
where the principal office of the owner, the Georgia Railroad and
Banking Company, is fixed by law.  We are confirmed in this view
from a consideration of that part of the act of 1889 designating
the property which shall be distributed to the several counties
through which the road runs.   That part of said act does not em-
brace, in the definition of the property to be distributed, property
of the character now under discussion.  The purpose of the act of
1889, as we have seen, was to tax located property, both tangible
and intangible, in the county where located, and that the rolling-
stock and other unlocated personalty should be distributed to the
several counties through which the road runs.

In the *Columbus Southern* case (89 *Ga.* 459) the words, "roll-
ing-stock and other personal property" are held to mean the roll-
ing-stock and other unlocated personalty; the word "other," there-

fore, the court says, "as here used, must mean other than located, i. e. the unlocated personalty, or personalty of like nature with rolling-stock." This class of personalty is distributed, the court says, for the reason that it is transitory, frequently moving and shifting its place, and may be fairly said to be situated at one place as well as another, or to 'reside,' if that word is allowable, along the entire length of the road." Clearly, then, the property other than rolling-stock which is to be apportioned is that which is transitory, frequently moving, shifting its place, that which may be fairly said to be situated at one place as well as another, or which resides along the entire length of the road. If the stock partakes of these characteristics, is transitory, frequently moving, shifting its place; if it can be fairly said to be situated at one place as well as another, then it is in its nature like rolling-stock; but if it does not partake of these characteristics it is not in its nature like rolling-stock, and, by the terms of the act, is not included with the property to be distributed.

From a consideration of the nature of the property, the right simply to participate in the profits of the company, and upon a dissolution of the corporation to share in its assets, it will readily appear that it has no existence in this State separate from its owner. It has no domicile separate from the domicile of the owner. Therefore it can have none of the characteristics of rolling-stock and can not be classed with property of like nature with rolling-stock. Its taxable situs or location is at the domicile of the owner, and does not change except as the domicile of the owner changes. It is urged that this construction is destructive of all distribution, for all personal property prior to the statute was thus fictitiously located by the law, and that the words "other personal property" would include nothing; that the rolling-stock itself was so located. This contention is unsound. The rolling-stock, for the reasons heretofore stated, was made by said act the subject of distributive taxation, as was also any other unlocated personal property. The legislature, no doubt, could have gone further and could have made the intangible personal property likewise the subject of distribution; but it has not done so. The legislative act, as construed in the *Columbus Southern* case, defines the property to be distributed. The rolling-stock is to be distributed, and other unlocated personalty, or personalty of like nature with rolling-stock.

This is the kind of property, under the act, which is to be distrib-
uted. All other property is to be taxed where located, whether the
location is an actual, physical location or located by a legal fiction.
Unless it comes within the terms of the act defining what property
is to be distributed, it remains where the law located it for taxable
purposes when the act of 1889 was passed. It is further urged,
although these shares of stock may have a conventional location at
the domicile of the corporation, that for the purposes of taxation
the domicile of the corporation is in each county through which
the road runs. In support of this contention certain expressions
in the *Columbus Southern* case, supra, are cited. On page 593 the
court says: "We have shown that in each county its rate of taxa-
tion is applied to the property of the railroad actually located
therein, and that it is perfectly just and proper to distribute the un-
located personalty of the road, for taxing purposes, in fair propor-
tion among the several counties, the corporation residing sub modo
in all the counties along its line of road, and, therefore, in one as
much as in another." Also on page 585, near bottom, referring to
the transitory, frequently moving personalty, the court says: "This
class of property may be fairly said to be situated at one place as
well as another, or to 'reside,' if that word be allowable, along the
entire length of the road." Whether the legislature had in view
the change of the domicile of railroad corporations for the purpose
of county taxation in the passage of the act of 1889, we do not
deem necessary to decide in this case; but conceding that this does
result, it would not be seriously contended that any change is made
except in so far as it relates to property to be apportioned to the
several counties through which the road runs, to wit, rolling-stock
and other unlocated personalty, or personalty with like nature with
rolling-stock. Even if it be necessary, to sustain this scheme of
distributive taxation, to hold that the legislature by implication
gave a domicile to railroad corporations in each county and city
through which the road runs, such new domicile would be for the
particular purposes in view, and for no other, that is to uphold the
scheme of distributive taxation of unlocated personalty. That this
was the meaning of the court in the language quoted above from
the opinion in the *Columbus Southern* case, will appear from the
following expression used by the court in the case of *Sparks* v.
*Macon,* 98 *Ga.* 302, the same judge writing both opinions: "The

reasoning there is," referring to the *Columbus Southern* case, "to a large extent applicable here, and need not be repeated. In that case the conclusion was reached that, *for the purpose of distributing for taxation the unlocated personalty* of the corporation among the several counties through which the railway ran, so as to subject this personalty to county taxation in proper proportion, the corporation might be treated as residing sub modo in all the counties along its line of road; and therefore in one as much as in the other."

Inasmuch as shares of stock in a foreign corporation, owned by a domestic corporation in this State, as we have shown, do not belong to the class of property to be distributed, no new domicile or residence was given to them, either expressly or by implication, by the act of 1889. The same course of reasoning is applied in respect to suit against a railroad corporation. The constitution requires that all civil cases shall be tried in the county where the defendant resides; and this applies to corporations as well as to natural persons. A railroad company must be sued, as a general rule, in the county where its principal office is located. The only exceptions to the general rule are contained in the Civil Code, § 2334, which relates to actions to recover damages for injuries to person or property or actions on contract. *McCall* v. *Central Ry. Co.,* 120 *Ga.* 604. "It is within the power of the legislature to make a railroad company a resident of each and every county in which the railroad is located, for the purpose of certain specified suits brought against it. 'Unless the right to sue elsewhere is specifically given by the statute, suits against a railroad company of this State should be brought in the county of its principal place of business.' *Central Ry. Co.* v. *State,* 104 *Ga.* 835."

*Judgment affirmed. Fish, P. J., absent. Evans and Beck, JJ., concur. Atkinson and Littlejohn, JJ., dissent.*

LITTLEJOHN, J. There should be but little danger of falling into error if this case is viewed from the proper standpoint, and if we apply to words their ordinary signification. The State creates a railroad corporation and prescribes the mode of taxing it. The simple question is, what mode has been prescribed? The statute prescribing the mode appears to be plain; and to go at length into the doctrine of domicile, or the construction of statutes, only tends to confusion. A railroad corporation derives all its powers from

the State, and of its domicile and the consequences resulting there-·
from the State has absolute control.   The Political Code, § 784,
requires the president or other chief executive officer of a railroad
company to return the value of the property of the company, which
return shall show:   "First, the aggregate value of the whole prop-
erty of said railroad company; second, the value of the real estate
and track-bed of said company; third, the value of the rolling-stock
and all other personal property of the company; fourth, the value
of the company's property in each county through which it runs."
The property embraced in this section is "the whole property" of
the company, and it consists of the "real estate and track-bed,   .  .
the rolling-stock and all other personal property."   The comp-
troller-general by section 786 is directed to assess the amount of
the property in each county as follows:   "First, it shall be assessed
upon the property located in each county, upon the basis of the  .
value given by the returns.   Second, the amount of the tax to be
assessed upon the rolling-stock and other personal property is as
follows:   As the whole of the property located in the particular
county is to the value of the whole property, real and personal, of
the said company, such shall be the amount of the rolling-stock and
other personal property to be distributed for taxing purposes to
each county.   The value of the property located in the county and
the share of the rolling-stock and personal property thus ascer-
tained, and apportioned to each of such counties, shall be the
amount to be taxed to the extent of the assessment in each county."
Sections 784 and 786 should be taken together.   In § 784, prescrib-
ing the returns, the property is divided into two classes—first, real
estate and track-bed; second, rolling-stock and· all other personal
property. .  Then of these two classes of property the return shall
show what?   That portion of it in each county through which the
road runs.   That made a plain rule out of which confusion could
not arise.   Section 786 does not depart from the returns.   The
property referred to in section 786 as "located in each county" is
found in 784 in the returns, and it is the real estate and track-bed
and personal property located in the particular county.·

The word "located," used in section 786, should be given its
ordinary signification, and it should be construed as antagonistic
to legal or fictitious location.   The word "located," as used in this
section, can only have reference to that class of property actually

located, as all the railroad's property had a location, either actual or by legal fiction, prior to the act of 1889; and the evident purpose of the legislature was not to interfere with the general law in taxing, and the right of a county to the tax on that property, real and personal, actually located within its territorial limits, but to prescribe a mode of taxing and distributing the tax of that class of property that had no actual, physical location; in other words, to sever fictitious legal situs (location) and distribute all such property for taxation among the counties through which the road runs, and thereby prevent a particular county from receiving an unfair proportion of the tax arising from the railroad company's property, by reason of the fact that the legislature had fixed the principal office of the railroad company within its borders. Unless this construction be given the word "located," it will defeat in part the purpose of the legislature, and make the word "located" refer to a class of property, when applied to Richmond county, that it could not have when applied to other counties through which the road runs, that is, that it is actually located property when applied to the counties other than Richmond. Such was not the intention of the act; and I could not more clearly demonstrate this than by the use of the language of Justice Lumpkin in *Columbus Sou. R. Co.* v. *Wright,* 89 *Ga.* 593, to wit: "The next objection made by the petition is, that the requirement of the constitution as to uniformity in taxation is violated, because certain personal property of railroads is taxed for the benefit of counties, though not situated therein, while as to other corporations and individuals county taxation is imposed, so far as any particular county is concerned, only on property within its territorial limits. This objection is disposed of by what has already been said. We have shown that in each county, its rate of taxation is applied to the property of the railroad actually located therein, and that it is perfectly just and proper to distribute the unlocated personalty of the road for taxing purposes, in fair proportion, among the several counties, the corporation residing, *sub modo,* in all the counties along its line of road, and therefore in one as much as in another."

The question naturally arises, why should the act of 1889 change, so far as taxation is concerned, the effect of fictitious legal situs (location) of one class of personal property and not of all such? The law of ejusdem generis is said to apply. For the purpose of

taxation the act divides the property into two classes upon which the comptroller-general is to levy the assessment: 1st, that located in each county.' 2nd, all other property. The terms, "the property located in each county," and "the rolling-stock and other personal property," embrace "the whole property of the company."

If we change the statute and make it read, "rolling-stock and other like personal property," the personal property of the company which was not "like personal property" and which was not "located" in a county would escape taxation, although it was embraced in the returns and was a part of "the whole property of the company." To tax all the company's property the comptroller-general must assess that "located in each county" and "the rolling-stock and other personal property," that is the rolling-stock and all other personal property mentioned in section 784 and in the returns. That he can not do if the word "*like*" is construed into the statute. This case is simplified by giving to the word "located" its ordinary signification and by resorting to very little construction where construction is not needed.