FULTON COUNTY *et al. v.* WRIGHT, comptroller-general, *et al.*

1. Money placed on general deposit in a bank by a railroad corporation, subject to check, creates a chose in action, and is taxable for county and municipal purposes in the county and municipality wherein the principal office of such corporation is located by its charter or by law. "Such property is ' located ' property in the meaning of the law of this State providing the machinery for distributing the property of railroad companies for county and municipal taxation."

2. The court did not err in refusing the mandamus.

FEBRUARY 14, 1917.

Petition for mandamus. Before Judge Ellis. Fulton superior court. January 17, 1916.

The petition was brought by the Counties of Fulton, DeKalb, Rockdale, Newton, Walton, Morgan, Greene, Taliaferro, Warren, McDuffie, Columbia, Oglethorpe, and Clarke, and the cities of Atlanta, Covington, Madison, Greensboro, Union Point, Crawfordville, and Thomson, against William A. Wright, comptroller-general of Georgia, to compel the distribution of certain taxes of the Louisville and Nashville Railroad Company and Atlantic Coast Line Railroad Company. Richmond County, the Board of Education of Richmond County, and the City Council of Augusta were permitted to intervene. By agreement of all parties the case was submitted to the trial judge, without a jury (with right of exception), upon the facts appearing from the admissions in the pleadings, the return for taxes, the testimony of W. H. Vincent, auditor of the Georgia Railroad, and a letter from counsel for the taxpayers to the comptroller-general, as follows:

"Hon. Wm. A. Wright, Comptroller-General, Atlanta, Ga., Aug. 4, 1915. Dear Sir: Judge Sibley advises me that he is thinking of applying for a mandamus requiring you to assess the item of taxable property of the lessees of the Georgia Railroad and Banking Company, to wit, ' Cash on hand and due from other railroads,' to the counties and municipalities through which the road of the lessor runs. At Judge Sibley's request I write to say that the return will be made in such manner as you may direct or as the courts should decide. There seems no reason why the taxpayer in this instance should be made a party to the mandamus proceedings, which, as I understand, will apply only to the taxes for the year 1915 and future years. Very truly yours, Jos. B. Cumming. Copy to Hon. Saml. H. Sibley, as answer to his of Aug. 2."

The tax return of Atlantic Coast Line Railroad Company and the Louisville and Nashville Railroad Company as lessees of the Georgia Railroad, of all property of said company subject to taxation on January 1, 1915, was dated July 12th, 1915, and sworn to by Chas. A. Wickersham as general manager of said lessees, containing, among others, the item: "Cash on hand, and amounts due from other roads, $92,728." Under the portion of the return making distribution of the property returned occurs the following: "Value of rolling stock and all other personal property in this State, $92,728. Pro rata value of personal property located in Richmond county, $92,728. Pro rata value of personal property in City of Augusta, $92,728." The return was blank as to the value of track and real estate in each county and city. It showed, however, the following items: "Value of real estate not used for railroad purposes: Greene county, $1,333; Clarke county, $26,400; Richmond county, $11,550," and similar amounts in the cities of Greensboro, Athens, and Augusta; no other property being returned.

The testimony of W. H. Vincent was in substance as follows: I am the auditor of the Georgia Railroad. The figures for the tax returns of the Georgia Railroad are made up in my office, and sent to the general manager to be sworn to. That is true of the return for 1915, in which $92,728.20 is returned as cash on hand and amounts due from other railroads. This money so returned comes from earnings from freight and passengers, mail pay, and miscellaneous earnings; it represents, of course, the funds on hand

at certain dates after expenditures have been made. These expenditures are incurred in the operation of the Georgia Railroad. . . The money taken in by the agents is deposited in the following depositories: Georgia Railroad Bank, Augusta, Ga.; Fourth National Bank, Atlanta, Ga.; American National Bank, Macon, Ga.; Farmers Bank, Monroe, Ga.; Bank of Monroe, Monroe, Ga.; Treasurer Ga. R. R., Augusta, Ga.; Georgia National Bank, Athens, Ga. These depositories are named by the treasurer for certain agents to deposit in. . .. The deposits are made in the name of the Georgia Railroad, and W. S. Morris, treasurer, takes charge of them after they are made. The disbursements, as a general proposition, are made through the Georgia Railroad Bank, Augusta, Ga.; in some cases through the Fourth National Bank, Atlanta, Ga. These two are considered the main depositories of the Georgia Railroad. Transfers of funds are made, as the case may be, from the various banks to the Georgia Railroad Bank at Augusta; as I said, all disbursements are made through it, and to do that of course transfers have to be made. In some special cases disbursements are made through the Fourth National Bank, Atlanta. When this return was made the percentage in each depository was: Georgia Railroad Bank, Augusta, Ga., 14.02; Fourth National Bank, Atlanta, 27.00; American National Bank, Macon, 38.60; Farmers Bank, Monroe, 4.06; Bank of Monroe, Monroe, 3.54; Treasurer Ga. R. R., Augusta, 7.92; Georgia National Bank, Athens, 4.86. That percentage fluctuates. The percentage stated is rather an abnormal one. The bulk of the money is kept in the Georgia Railroad Bank at Augusta, Ga. It and the Fourth National Bank are considered the main depositories. As to whether it is a matter of uncertainty where the largest portion is on any particular day, it is left entirely with the treasurer of the Georgia Railroad, who adjusts the situation every morning, and as the balance shrinks in the Georgia Railroad Bank at Augusta he replenishes the fund by transferring from the other depositories. The partnership, as you might call it, of the Louisville and Nashville Railroad Company and Atlantic Coast Line Railroad Company have their headquarters in Augusta, Ga. The headquarters of the lessees of the Georgia Railroad and Banking Company are located at Augusta, Ga. These depositions are taken at my office there, the treasurer of the organization is there, and the head offices are

at Augusta. W. S. Morris, the treasurer, has his office at Augusta. He has in charge the disbursement of the funds of the lessee company, upon regularly approved vouchers, which are sight drafts on the treasurer; and gives checks to cover these drafts, which checks are countersigned by the auditor. He signs these checks at Augusta, drawing through the Georgia Railroad Bank at Augusta. All the money of the Georgia Railroad is under his supervision. As a general proposition, the money in these depositories is put there temporarily, and for convenience, but there are other reasons entering into the situation. As a rule the disbursements are made through the Georgia Railroad Bank, except on special occasions, and then through the Fourth National Bank. The Georgia Railroad does not send out a pay-train with cash. Payments are made with checks. Vouchers are sent out to parties in settlement of invoices and other accounts, which when properly dated and receipted become sight drafts on the treasurer at Augusta, and those drafts are paid the banks by the treasurer by checks drawn by him on the Georgia Railroad Bank. This cash has been returned for the City of Augusta and County of Richmond since 1903, the first return being in 1910. The agents of the Georgia Railroad are permitted to cash these vouchers; but as they are sight drafts on the treasurer, they may be returned if not properly dated and receipted. We have several means of paying claims for overcharges, and damage to goods in transit. On overcharges, the agent pays direct from his station funds, taking proper receipt therefor, remitting to the freight claim agent for his relief. On loss and damage claims, they are also settled in this manner up to a certain stated amount. Sight drafts are also used as a medium of paying claims, sent by the freight claim agent direct to the payee. The headquarters of the Louisville and Nashville Railroad Company are at Louisville, Kentucky; of the Atlantic Coast Line Railroad Company at Wilmington, North Carolina. They are both foreign corporations. The residence of the general manager of the Georgia Railroad, Mr. Wickersham, is College Park, Ga., Fulton county. The residence of the general passenger agent of the Georgia Railroad is Atlanta, Ga. He has a general passenger office there too. He has also an office in Augusta. The general manager, Mr. Wickersham, has an office in Atlanta. Of the other general officers having their offices in Atlanta are the

superintendent of maintenance of way, and superintendent of car service. The general manager has his office in Augusta; the general passenger agent in Atlanta; the superintendent of maintenance of way and superintendent of car service have their offices in Atlanta. The others, including the treasurer, general freight agent, freight claim agent, superintendent, chief law agent, auditor, general counsel, superintendent of motive power and equipment, have their official offices in Augusta. The general machine shops are in Augusta, and the general manager's official office. We have no meetings of stockholders and directors. Conferences with the other officers of the Georgia Railroad are held by the general manager in Augusta. He does confer also with other officials in his Atlanta office. It is true that he spends most of his time in Atlanta.

After argument the court held that the property in dispute was taxable in Augusta and Richmond county, and refused a mandamus. To this judgment the petitioners excepted and assigned error on the ground, among others, that the money is property, the tax on which is distributable under the statutes of Georgia, and that the comptroller-general should have been required to distribute the same and to require such returns for taxation as would distribute the same.

*Samuel H. Sibley,* for plaintiffs.

*Clifford Walker, attorney-general, Pierce Brothers, C. Henry Cohen,* and *Isaac S. Peebles Jr.,* for defendant.

HILL, J. (After stating the foregoing facts.) This case is controlled by the principle decided in *Greene County* v. *Wright,* 126 *Ga.* 504 (54 S. E. 951). That decision is so thoroughly reasoned out that we will not undertake to cover the same territory again. In the view we take, it is only necessary to point out wherein that decision is controlling in the instant case. In that case the Georgia Railroad and Banking Company, a domestic corporation whose railroad is wholly within this State and runs through the territorial limits of each of the petitioning counties and municipalities (the same counties being petitioners in that case as in this), owned in the State of Georgia fifteen thousand shares of the capital stock of the Western Railway of Alabama, a corporation of the State of Alabama. In that case it was held: "Stock in a non-resident railroad corporation owned by a domestic

railroad company is taxable for county and municipal purposes in that county and city wherein the principal office of such corporation is fixed by its charter or by law. Such property is 'located' property in the meaning of the law of this State providing the machinery for distributing the property of railroad companies for county and municipal taxation." In the instant case the Georgia Railroad returned for taxation, among other things, $92,-728.20 as "cash on hand and amounts due from other railroads." This money so returned, according to the agreed statement of facts, came from freight and passenger earnings, mail pay, and miscellaneous earnings on hand at certain dates, after expenditures were made in the operation of the railroad. The Georgia Railroad is operated by the Louisville and Nashville Railroad Company and the Atlantic Coast Line Railroad Company as lessees. The money collected by the agents of the railroads is held in certain "depositories," as follows: Georgia Railroad Bank, Augusta; Fourth National Bank, Atlanta; American National Bank, Macon; Bank of Monroe and Farmers Bank, Monroe; Treasurer Georgia Railroad, Augusta; Georgia National Bank, Athens. At the date of the tax return each of these depositories had money on deposit in the name of the Georgia Railroad, ranging from 3.54 per cent. to 38.60 per cent. of the amount returned for taxation. The percentage in each bank fluctuated, according to the statement of facts. As to the matter of uncertainty where the largest portion is on any particular day, it is left entirely with the treasurer of the Georgia Railroad, who adjusts the situation every morning, and as the balance shrinks in the Georgia Railroad Bank at Augusta he replenishes the fund by transferring money from other depositories. It will thus be seen that the sum returned for taxation was in the various banks and with the treasurer at Augusta, where the principal office of the railroad is.

When the money was placed on general deposit in the banks, the title to the money passed to the banks, and it ceased to be the money of the railroad, and the right of the railroad to the amount deposited became a chose in action. *McGregor* v. *Battle,* 128 *Ga.* 577 (58 S. E. 28, 13 L. R. A. (N. S.) 185). A chose in action is taxable at the domicile of the owner. *Greene County* v. *Wright,* supra. See *City Council* v. *Dunbar,* 50 *Ga.* 387, 393; *Trustees* v. *Augusta,* 90 *Ga.* 634, 648 (17 S. E. 61, 20 L. R. A. 151). But it

can not be said that the money placed on general deposit in these depositories is the money of the railroad and is taxable as such in each county where deposited. Really what the railroad had to give in for taxation was not money at all, but the chose in action against the banks, or the right to the amount of money so deposited when called for or checked out, unless, of course (which does not appear), the money itself, by agreement, was to remain in the banks as the money of the railroad depositing it. It appears from the agreed statement of facts that disbursements of the money deposited, as a rule, were made by checks through the Georgia Railroad Bank at Augusta, Ga., one of the depositories. This being so, the chose in action—the right of the railroad to the amount of money deposited with the banks—would be taxable, under the decision in the *Greene County* case, supra, at the main office of the railroad, which.is in Augusta, Richmond county, Georgia.

It follows from what has been said that the court did not err in refusing the mandamus.

*Judgment affirmed. All the Justices concur.*