*N. J. Norman* and *W. R. Hewlett,* contra.

---

CITY OF BLAKELY *v.* HILTON *et al.,* executors.

The personal property of a deceased person, in the hands of his executors during the settlement of the estate, is taxable at the place of the domicile of the decedent, if a resident of the State. When it comes into possession of the heir or legatee, it is taxable to the heir or legatee at the place of his domicile. When it goes into the hands of a trustee under a will or otherwise, it must be taxed to the trustee at the place of his domicile.

No. 1397. FEBRUARY 24, 1920.

Equitable petition. Before Judge Worrill. Early superior court. April 9, 1919.

Mrs. Sarah Hilton, J. S. Sherman, and H. E. Hightower, as executors of the estate of E. Hilton, sought to enjoin the collection of a tax fi. fa. for $3,000, representing the taxes assessed by the municipal authorities of the City of Blakely, a municipal corporation in the County of Early, against the executors as such, for the year 1917, upon certain cotton, money, and notes of the estate of E. Hilton. The petition alleged that the situs of the cotton, money, and notes for taxation was outside of the corporate limits of the city, because: (1) E. Hilton, at the time of his death, was domiciled in the County of Early outside of the city limits; (2) only one of the three executors was a resident of the city, two of them residing beyond the corporate limits of the city and in the County of Early; (3) only two of the eight beneficiaries under the will of E. Hilton were residents of the city; (4) the property sought to be taxed was not used in con-

nection with any business enterprise by the executors within the limits of the city (the cotton was stored in a warehouse within the city for the purpose of sale; the money was on deposit with and the notes were in the custody of a bank within the city for the purpose of safekeeping only) ; (5) the principal business of the decedent — farming — had since his death been carried on by his executors, beyond the corporate limits of the city, the executors maintaining an office and an agent of the estate, who had general charge of the personal property used in and upon the farms of the decedent, and who collected the accounts and paid the bills of the estate, "all beyond the limits of the City of Blakely." To the petition the city filed a demurrer, both general and special. The demurrer was overruled, and the city excepted. The pertinent allegations of the petition will appear from the opinion, in connection with the general discussion of the question.

*Glessner & Collins,* for plaintiff in error.

*Pottle & Hofmayer,* contra.

GEORGE, J. (After stating the foregoing facts.) Section 16 of the charter of the City of Blakely confers upon the city the power to "put an ad valorem tax, not exceeding the constitutional rate, on all property in said city." The charter further provides that "the taxing power of said city shall be as general, full and complete as that of the State itself." Acts 1900, pp. 219, 224. No statute in this State, and no provision in the charter of the City of Blakely, in terms or by necessary construction, fixes the situs for taxation of the personal estate of a deceased person while in course of administration. Generally the rule is prescribed by statute. Sometimes it is taxable to the heir or legatee at his domicile; sometimes, to the estate as such, or to the personal representative, at its actual situs, if the deceased was a non-resident; sometimes, to the personal representative in his capacity as such at his domicile; and sometimes, to the personal representative at the place of his appointment (usually where the deceased resided), or at the place of the last domicile of the deceased, if a resident. See 1 Cooley on Taxation (3d ed.), 664; Gray's Limitations of Taxing Power, § 109; 1 Desty on Taxation, § 68; Burroughs on Law of Taxation, § 98; 37 Cyc. 958; notes in L. R. A. 1915C, 903, 949. In the absence of statutory rule in this State, or of any decision by this court on the question, re-

sort will be had to the decisions of other courts in similar cases for a just and proper rule.

The rule that such property is taxable to the heir or legatee at his domicile is impracticable. Until settlement of the estate, it can not be certainly known what personalty, if any at all, the heir or legatee will receive. The case of *Central of Georgia Railway Company* v. *Wright*, 124 *Ga.* 630 (53 S. E. 207), in which it was ruled that the "substantial, beneficial ownership of the stock [stock in an Alabama corporation owned by the plaintiff in error in that case and pledged to a New York trust company for the purpose of securing an issue of bonds and in the actual] possession of the trust company in the city of New York] being in the Central of Georgia Railway Company, that company is liable to be taxed thereon in Georgia," does not require the adoption of the rule. We also eliminate the rule that such property should be taxed at its actual situs, for the reason that the deceased in the present case was a resident of the State. That the legislature, subject to constitutional limitations, has full power to assess taxes against persons domiciled, or property situated, within the State, is not doubted. Upon the just principle that protection and taxation are correlative, the State has ample power to tax the estates of non-residents, living or dead, actually located within the State; but that question is not here involved. The petition in this case alleges that the personalty of E. Hilton — choses in action and certain farm products — was not engaged in any business enterprise within the city. Hence we do not deal with the power of the State to tax personal property which has acquired a business situs in a State or district other than the State or district of the owner's residence. See able review of the decisions of the Supreme Court of the United States upon this question, in 15 Columbia Law Review, 377.

A just and proper rule in cases of this character, as we think, is found in Cornwall *v.* Todd (1871), 38 Conn. 443, where it was ruled: "The personal property of a deceased person, during the settlement of the estate, is taxable in the place of domicile of the deceased. When it comes into the possession of the heir or legatee, it must be taxed in the place where the heir or legatee resides. When it goes into the hands of a trustee, under the will or otherwise, it must be taxed where the trustee or cestui que.

trust resides, as the case may be." It there appeared that Thomas
D. Moss, at the time of his death, resided in the fifth school dis-
trict in the town of Cheshire, where his widow still lived and
where his real estate was situated. His executor lived in the
first school district. The fifth district levied a tax against the
estate of the decedent, including, among other property, money
at interest. The executor filed a petition in equity to restrain
the collector from collecting a tax on the money at interest. By
the Connecticut statute it was provided that personal property
in the hands of a trustee should be listed in the town in which
such trustee resided. In analogy to that statute, it was the
contention of the executor that the money at interest could only
be taxed for district purposes in the district where he resided.
Carpenter, J., delivering the opinion of the court, said: "That
an executor or an administrator, during the settlement of the
estate and before final distribution, is in some sense a trustee,
cannot be denied; but we do not think he is such a trustee as
this statute contemplates. . . . Executors and administrators
are officers of the law. Ordinarily they have no interest in the
property held by them as such. The legal title vests in them
merely to enable them to collect, care for, and dispose of the
property, for the payment of debts, and for distribution among
heirs or legatees. It is for a specific purpose and for a limited
time, usually a year, more or less. But when a party is made
a trustee by deed or will, for the use of another, or for some
charitable purpose, the property vests in him usually for a life-
time or longer. In respect to such trusts, there is a reason for
declaring the sense of the legislature as to the place where the
trust property shall be taxed; but we see no occasion for requiring
the personal property of a deceased person, during the settlement
of the estate, to follow the same rule. . . Who, for the pur-
poses of taxation, is to be regarded as the owner of this prop-
erty? We think we may with propriety say that it belongs to
the estate. It does not belong to the executor, except in a lim-
ited sense, as we have already seen. It does not belong to the
heir before distribution; and ordinarily the legatee has no claim
until the debts are paid. . . So far as property is concerned,
and for the purposes of collecting and paying debts, and doing
justice by others, the acts and doings of a deceased person while

in life still continue to affect the living. In a certain legal sense, therefore, and for certain purposes, he still lives and will continue to live until those purposes are fully accomplished. As he is incapable of acting for himself, the executor or administrator represents him. The law requires this property, while in a transition state from the dead to the living, to bear its proportion of the public burdens. For the purposes of taxation, therefore, it must have a situs. None can be more appropriate than the place where the deceased lived and died." The case from which we have quoted at length does not stand alone. In the case of City and County of San Francisco v. Lux (1884), 64 Cal. 481 (2 Pac. 253), the Supreme Court of California, after reviewing prior decisions in that State to the effect that the situs of personal property, especially of intangibles, follows the person of the owner, concluded that "the situs of the property, for taxation purposes, does not change upon the death of the owner. The personal property of decedents is taxed at the former domicile of the decedent." The property involved was money on deposit with a bank, and the question was its taxable situs while in the hands of the personal representative of the estate for the purposes of administration. In the case of Millsaps v. City of Jackson (1901), 78 Miss. 537 (30 So. 756), the Supreme Court of Mississippi held that " Stocks and bonds of a testator in the hands of executors during administration should be assessed for municipal taxes at the domicile of the testator, and not at the respective domiciles of the executors," while conceding that such stocks and bonds, in the hands of executors as trustees, after the termination of their duties as executors, should be assessed for municipal taxes at the respective domiciles of executors. To the same effect see also State v. Beardsley, Fla. (1919), 82 So. 794. The foregoing cases were not controlled by statutes. The Supreme Court of Appeals of Virginia, in the absence of statute, in the case of City of Staunton v. Stout's Executors (1889), 86 Va. 321 (10 S. E. 5), held that " Bonds belonging to the estate of a decedent are taxable at his last domicile, without regard to the residence of his executors." In the later case of Commonwealth v. Williams' Executors (1904), 102 Va. 778 (47 S. E. 867), the same court held that debts due the deceased were taxable at the domicile of the executor, but the court seemed to consider the domicile of the executor to be in

the place of his appointment (the place where the deceased last dwelt). In the case of Stephens *v.* Booneville (1864), 34 Mo. 323, it was ruled that the personalty of a deceased "is taxable in the domicile in which he resided at the time of his death, and not in that of his personal representative." That decision does not refer to any statute, but in the later case of Taylor *v.* St. Louis County Court, 47 Mo. 594, 603, it was said that "the statutory provision would be sufficient to justify the conclusion in the case cited, without claiming the proposition to be a general one." In the following cases, though they turn on statutes, the rule is recognized: Hardy *v.* Yarmouth (1863), 6 Allen (Mass.), 277; Avery *v.* DeWitt (1888), 72 Mich. 25 (40 N. W. 39); Commonwealth *v.* Camden (1911), 142 Ky. 365 (134 S. W. 914). Burroughs, in his work on Taxation, 224, states the rule as follows: "The personal property of decedents is taxed at the domicile of the decedent to the person having the legal title, and not in the name of the deceased person; during the settlement of the estate it must have a situs somewhere; and none so appropriate as where the decedent lived." In 1 Desty on Taxation, 332, § 68, the rule is stated as follows: "The personal estate of a testator accompanies him wherever he may reside and become domiciled with it, according to the law of his residence. The situs is at the domicile of decedent during settlement of the estate, and must be assessed to the one having the legal title." In Gray's Limitations of Taxing Power, 86, § 109, it is said that the weight of authority is in favor of the proposition that personal property in the hands of an executor is taxable by the State out of whose courts the officer's authority issues. (The general rule in this State is that the ordinary of the county of the residence of the deceased has exclusive jurisdiction to appoint his personal representative. See Civil Code, §§ 3853, 3969, 4792, 4793.) The rule announced in Cornwall *v.* Todd, which we have approved, would appear to be fair and convenient; fair to the estate and the taxing district; convenient to the executors and the taxing authorities.

So long as Mr. Hilton continued to live, it is not pretended that his personal estate was subject to taxation by the city. If the three executors of his will lived in the county, beyond the corporate limits of the city, it is not pretended that any part of

the notes or money on deposit could be taxed by the city. If, therefore, the taxable credits and cotton belonging to his estate are subject to taxation by the city, it is so because one of his executors happens to be a resident of the city. If this theory be correct, then the power of the city to impose the tax depends entirely upon the residence of the person who may be appointed to take charge of and administer the estate. And one who resided all his life within a municipality might, by appointing as his executor a non-resident of the city, exempt his personal estate, while in process of administration, from taxation by the city. In no just or proper sense can it be said that the personalty assessed by the city in this case constitutes any part of the taxable wealth of the city.

We have not overlooked the general statutory rule for the return of personal property, as provided in the Civil Code, § 1075. The situs of personal property for the purposes of taxation, with certain exceptions not material here, is, under our law, at the domicile of the owner, if a resident of this State. See *City Council of Augusta* v. *Dunbar*, 50 *Ga.* 387, 392, 393; *Wright* v. *Southwestern Railroad Co.*, 64 *Ga.* 783, 799; *Greene County* v. *Wright*, 126 *Ga.* 504 (54 S. E. 951); *High Shoals Mfg. Co.* v. *Penick*, 127 *Ga.* 504 (56 S. E. 648); *Wright* v. *Brunswick*, 140 *Ga.* 231 (78 S. E. 839, Ann. Cas. 1914D, 287); *Joiner v. Pennington*, 143 *Ga.* 438 (85 S. E. 318); *Fulton County* v. *Wright*, 146 *Ga.* 447 (91 S. E. 487). We are also mindful that upon the death of the owner intestate, title to all his personal property vests in his administrator for the benefit of his heirs and creditors (Civil Code, § 3929); that, until the required assent by the executor, the legal title to the devised realty and bequeathed personalty of the testator is in the executor (Civil Code, § 3895); and that an executor is a trustee, having title to the devised realty as well as to the bequeathed personalty for the purposes of using the same to pay debts and legacies. *Blake* v. *Black*, 84 *Ga.* 392, 399 (11 S. E. 494). But, as we have already seen, the personal representative holds the title for a limited purpose, and the executor is a trustee in a limited sense. We have also given due weight to the case of *Trustees of the Academy of Richmond County* v. *Augusta*, 90 *Ga.* 634 (17 S. E. 61, 20 L. R. A. 151), relied upon by the plaintiff in error to sustain its contention that at least one third of the personality assessed for taxes is subject to taxation by the munici-

pality. In that case the City Council of Augusta sought to subject to taxation certain choses in action. held by several trustees under a trust created by the will of Richard Tubman for the erection of a poorhouse. Some of the trustees resided in the City of Augusta and others outside of the city, in the county. It was held: "Where the trustees as tenants in common own choses in action which are taxable as private property, and some of the trustees reside within and some without the limits of a municipal corporation, the corporation may tax the pro rata shares of those trustees residing within, but cannot tax the shares of those residing without such limits. This is true irrespective of the question as to whether a majority or minority of the trustees reside within the municipality." In the course of the opinion by Mr. Justice Simmons it was said: "Our statutes make no provision for such a case as this, nor is there any decision of this court on the subject. We think, however, a just and proper rule under such circumstances is that furnished by the decisions of other courts in similar cases, which are here cited;" citing Mayor etc. of Baltimore *v.* Stirling, 29 Md. 48; Appeal Tax Court of Baltimore City *v.* Gill, 50 Md. 396; State of Ohio ex rel. Harkness *v.* Matthews, 10 O. St. 431; Hardy *v.* Yarmouth, supra. The Maryland cases so cited related to property in the hands of trustees as distinguished from ordinary executors. The Hardy case, already cited in this opinion, turned upon a statute of Massachusetts; and it is to be noted that the same statute provides that the situs of a decedent's personal property, while in the hands of his personal representative for the purposes of administration, is at the place where the decedent last dwelt. The ruling in Harkness *v.* Matthews, supra, supports the position of counsel for the city, and it is freely admitted that other equally respectable courts have followed the same rule. Perhaps the analogies of our statute and of our decisions would permit a different conclusion from that reached in the present case. But even if so much be conceded, we are satisfied with the equity of the rule announced, and are not bound to adopt a different one.

What we have said above may apply particularly to the taxable situs of the notes and the money on deposit — choses in action. With respect to the cotton a somewhat different question is presented by the demurrer. In 1912 an amendment to article seven, section

two, paragraph two, of the constitution of this State authorized the General Assembly to exempt from taxation farm products, including baled cotton grown in this State and remaining in the hands of the producer, but not longer than for the year next after their production. Park's Ann. Code, § 6554. By an act approved August 13, 1913 (Acts 1913, p. 122), it was provided, that, "from and after the passage of this act, all farm products, including baled cotton grown in this State and remaining in the hands of the producer, but not longer than for the year next after their production, shall be exempt from taxation." The petition does not unequivocally allege that the cotton stored in the City of Blakely was grown by E. Hilton, or upon lands owned by him in the State of Georgia; nor is it disclosed how long the cotton had been on storage within the city at the time of the assessment. It is alleged that the testator died on April 5, 1916. The assessment was made as of February 1, 1917. The cotton was actually sold by the executors in the summer of 1917. The special demurrer attacked these particular omissions. In the view we take of this question, however, the omissions are immaterial. In *Wright* v. *Brunswick,* supra, it appeared that Wright was part owner of a vessel registered at the port of Brunswick. The vessel made daily trips from Brunswick to St. Simons, both within the County of Glynn, and to the City of Darien in the County of McIntosh, returning to Brunswick in the afternoon, where she remained during the night. Wright resided beyond the corporate limits of the City of Brunswick, in the County of Glynn. It was held that Wright's interest in the vessel was not subject to municipal ad valorem taxation by the City of Brunswick. See also *City of Albany* v. *Brown,* 137 *Ga.* 796 (74 S. E. 518). The delegation by the General Assembly to the City of Blakely of the power to "put an ad valorem tax . . on all the property in said city," must, therefore, be construed to mean the delegation of the power to tax all the property "in the city" for the purposes of taxation under the general rule applicable thereto. Neither the constitutional amendment of 1912 nor the act of 1913 changed the general rule and policy of this State that personal property is taxable only at the domicile of the owner, if a resident of this State. If it be urged that this ruling exempts, as in this case, cotton (tangible personalty) actually within the city, and there-

fore protected by it, from the just burden of municipal taxation, the reply is that the State has conferred upon the city its power to tax, and that both the citizen of the State residing outside of the city and the city itself, as constituents of the State, are under the operation of the general laws of the State. Our conclusion, therefore, is that under the allegations of the petition none of the personal estate of the decedent in the hands of his executors for administration, and in process of administration, was liable to taxation by the plaintiff in error. The will is not attached to the petition. If it should appear upon the trial that the executors were in fact testamentary trustees, the rule announced in *Trustees of the Academy of Richmond County* v. *Augusta,* supra, would of course be controlling.

*Judgment affirmed. All the Justices concur, except Gilbert, J., absent on account of sickness.*