## GARRARD *v.* MILLEDGEVILLE BANKING COMPANY.

No. 6807. APRIL 10, 1929.

*Allen & Pottle,* for plaintiff.
*Hines & Carpenter* and *Frank W. Bell,* for defendant.

BECK, P. J. In May, 1927, W. T. Garrard executed and delivered to the Milledgeville Banking Company a deed and bill of sale conveying certain real and personal property to the bank to secure a debt. That instrument made a conveyance of twenty-five shares of the capital stock of the First National Bank of Milledgeville, in the following words: "And for the same consideration, and to secure the said bank the payment of the said notes hereinafter mentioned, I hereby bargain, sell, and deliver to the said Milledgeville Banking Company, its successors and assigns, 25 shares of the capital stock of the First National Bank of Milledgeville, Ga., said shares being evidenced by stock certificate No. 275, issued by said bank on the 6th day of January, 1921, and issued to me in the name of W. T. Garrard Jr. This conveyance of capital stock is by this bill of sale intended to pass the title to the said stock and the certificate of stock issued therefor unto the said the Milledgeville Banking Company." At the same time W. T. Garrard executed in blank an assignment on the back of the certificate of stock issued by the First National Bank, and delivered it to the bank. Afterwards W. T. Garrard died. His widow made application for a year's support out of his estate. The appraisers set apart to her for her year's support the twenty-five shares of stock above referred to, together with other property. The bank was about to advertise for sale the above-mentioned stock under the power of sale contained in the conveyance of W. T. Garrard to the bank, when Mrs. Harriett Allen Garrard, the widow, filed her petition praying that the bank be enjoined from advertising and selling the stock, and that it be required to deliver the certificate to her. The court below dismissed the petition on general demurrer, and Mrs. Garrard excepted.

Mrs. Garrard contends that the transfer of the stock to the bank to secure the debt did not pass the title to the property into the bank, but that the transfer amounted merely to a pledge whereby the bank acquired only a lien on the stock, and that her claim to it as a year's support was superior to such property rights as the bank had by virtue of the transfer. She contends that choses in action other than negotiable paper can not be assigned so as to pass the title to the assignee for the purpose of securing a debt; that section 3306 of the Code does not apply to choses in action; that the provision in this section which in substance declares that

where a bill of sale to property is made to secure a debt, it conveys the title for that purpose, does not apply to an assignment like that in question purporting to convey choses in action; that the Code section referred to, being in derogation of the common law must be strictly construed; and that a certificate of stock is not personal property, but is a chose of action and is not covered by the section of the Code last referred to.

We can not agree to this contention, in view of certain other Code sections and decisions by this court construing them. Counsel for plaintiff in their written argument place their reliance on the case of *Ullman* v. *Brunswick Title Guarantee & Loan Co.,* 96 *Ga.* 625 (24 S. E. 409). From the reported facts in that case it appears that Max Ullman died in May, 1893, and his widow qualified as his executrix in February, 1894. On April 1, 1893, he had given to the Brunswick Title Guarantee & Loan Co. a note for $460 principal, due four months after date. The note recited that he had deposited with said company, to secure the payment of this note or any other liability of him to the company due or to become due, twenty shares of fully paid stock in said company, representing that he had full power to pledge such collateral, and constituting the president, vice-president, and cashier of said corporation, jointly and severally, attorneys to collect or otherwise dispose of the whole or any part of said collateral at public or private sale, and without notice of any intention to sell, in case of non-performance of this contract, applying the proceeds to the payment of this note, including interest, and accounting to him for the surplus, if any, etc. On December 27, 1894, the company served the executrix with written notice that on January 1, 1895, within the legal hours of sale, it would offer for sale before the court-house door 20 shares of stock in said company, pledged to it by M. Ullman for the balance of the purchase-money thereon, that is, $460 with interest from August 1, 1893, at eight per cent. per annum, unless before said time the principal and accrued interest were fully paid. On December 31, 1894, the executrix presented her petition praying for injunction to prevent the sale of the stock by the company as proposed. The injunction was denied. The petition alleged that Max Ullman left but a small estate appraised at $2,035, this including 40 shares of stock of the defendant company valued at $400, which estate was wholly and entirely in-

solvent; that on March 20, 1894, petitioner applied for the setting apart of a year's support to herself and her children and on the next day the appraisers made return setting apart to her $3,500, to which a caveat was filed by the receiver of the First National Bank, upon the hearing of which the court of ordinary rendered judgment setting apart to her $2,500. The widow claimed that her year's support was a lien on the shares, superior to the claim of the company. In the decision in that case it was said:

"Under section 2571 of the Code, 'among the necessary expenses of administration, and to be preferred before all other debts,' is the provision for a year's support for the wife and children of the deceased. That this claim takes precedence of a mortgage has been repeatedly held by this court (see *Lathrop* v. *Brown*, 65 *Ga.* 312; *Cully* v. *Bloomingdale*, 68 *Ga.* 756); and we do not think a pledge stands upon any better footing in this respect than a mortgage. The code declares that the pawnee has 'a special property for the purpose of the bailment,' but that 'the general property in the goods remains in the pawner.' (§ 2142.) This is simply declaratory of the common law, under which a pledge is a lien upon property but not a legal title to it. In Jones on Pledges (§§ 7, 8), it is said: 'The legal title to property pledged remains in the pledgor. . . It is true Lord Coke has said that the pledgee has a property in it, and not a custody only. But he is understood to mean by this, a special property, and not a property in the general sense of the word.' 'An agreement whereby certain certificates of stock are delivered as collateral security, with a stipulation that if the debt is not paid at maturity the securities shall be under the control of the holder, who is authorized to dispose of them and apply the proceeds to the credit of the maker, is a pledge of the stocks. . . The title remains in the pledgor, with merely an authority to the pledgee to sell in case of default.' Even though there be a formal transfer of title to the stock, the transaction is still a pledge, and as between the parties constitutes merely a lien upon the property." It will be seen, upon reading the foregoing, that the case referred to differs from the instant case. There was no such absolute written transfer and assignment of the title as appears in the case at bar; and that makes a very great difference in the case. It is true that at the close of the decision in the *Ullman* case Chief Justice Simmons, who delivered

the opinion of the court, said: "Even though there be a formal transfer of title to the stock, the transaction is still a pledge, and as between the parties constitutes merely a lien upon the property." We think that the sentence last quoted is obiter dictum. The question there so tersely and directly ruled upon was not involved in the case. We are of the opinion that the expression "personal property," as used in section 3306 of the Code, relating to sales to secure debt, includes choses in action as well as visible, tangible personal property. Section 3646 of the Code reads as follows: "Personalty, or personal estate, includes all such property as is movable in its nature; in fact, everything having value inherent in itself, or the representative of value, and not included in the definition of realty. Stocks representing shares in an incorporated company holding lands, or a franchise in or over lands, are personalty." And section 3653 is in the following language: "All choses in action arising upon contract may be assigned so as to vest the title in the assignee, but he takes it, except negotiable securities, subject to the equities existing between the assignor and debtor at the time of the assignment, and until notice of the assignent is given to the person liable." In the case of *Hamil* v. *Flowers*, 133 *Ga.* 216 (65 S. E. 961), certain shares of stock in a corpora·tion were involved, and there was a question also as to the nature and character of this property; and it was held that "the shares of stock were personal property, and their situs was the domicile of the domestic corporation, for the purpose of giving jurisdiction to an equitable proceeding for any of the purposes indicated in the Civil Code, § 4976." See also *Greene County* v. *Wright*, 126 *Ga.* 504, 509 (54 S. E. 951); *Oliver* v. *Oliver*, 118 *Ga.* 362 (45 S. E. 232). In *Small* v. *Wilson*, 20 *Ga. App.* 674, 677 (93 S. E. 518), it was said: "We think it must be accepted as true that shares of stock, as such, are not chattels; they bear a closer resemblance to choses in action; and, properly speaking, they are merely evidence of property. Shares in a corporation are generally said to be incorporeal personal property. *Greene County* v. *Wright*, 126 *Ga.* 504, 509 (54 S. E. 951); *Oliver* v. *Oliver*, 118 *Ga.* 362 (3) (45 S. E. 232); 7 Words & Phrases, 6662." And in *Western National Bank* v. *Maverick National Bank*, 90 *Ga.* 339, 342, 346 (16 S. E. 942, 35 Am. St. R. 210), this court held: "Under our statutes, the legal title to the choses in action is assignable. . . The object

344

was to render more available for commercial purposes a species of property, the title to which was formerly incapable of legal transfer." See also *Boykin* v. *Epstein,* 94 *Ga.* 750 (22 S. E. 218). In *Sprouse* v. *Skinner,* 155 *Ga.* 119, 124 (116 S. E. 606), it was said: "The written assignment of the policy [of life insurance] involved in this case contains the words, 'assign and transfer . . . my right, title, and interest in,' etc.; and those words, in connection with the provision contained in section 3653 of the Code, that all choses in action arising upon contract may be assigned so as to pass the title to the assignee, are controlling in this case, and the judge below properly so held." See also *Morris* v. *Ga. Loan &c. Co.,* 109 *Ga.* 12 (34 S. E. 378, 46 L. R. A. 508), *Southern Mutual Life Ins. Asso.* v. *Durdin,* 132 *Ga.* 495 (64 S. E. 264, 131 Am. St. R. 210). We do not think that the fact that the stock in question had not been actually transferred on the books of the First National Bank affected the title of the Milledgeville Banking Company, the defendant, as between the parties to this case. In view of what we have said, the judgment of the court below must be affirmed. *Judgment affirmed. All the Justices concur.*